Michael J. Lockerby (admitted *pro hac vice*)
    mlockerby@foley.com
Alan D. Rutenberg (admitted *pro hac vice*)
    arutenberg@foley.com
Benjamin R. Dryden (admitted *pro hac vice*)
    bdryden@foley.com
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
Telephone:  202.672.5300
Facsimile:   202.672.5399

A. Joel Richlin (CA Bar No. 246318)
    jrichlin@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, California 90071
Telephone:  213.972.4500
Facsimile:   213.486.0065

Attorneys for Defendant
REGAL BELOIT CORPORATION,
a Wisconsin corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD'S MATERIAL SUPPLY COMPANY, INC. a California corporation; and LLOYD'S EQUIPMENT, INC., a California corporation,,<br><br>                                    Plaintiff,<br><br>              vs.<br><br>REGAL BELOIT CORPORATION, a Wisconsin corporation; and DOES 1-25,<br><br>                                    Defendants. | Case No. 2:16-cv-08027-DMG (JPRx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) & (6), OR ALTERNATIVELY, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Date:  March 3, 2017<br>Time:  9:30 a.m.<br><br>Complaint Filed: 10/27/16<br>Judge: Honorable Dolly M. Gee<br>United States Courthouse<br>350 West 1st Street<br>Courtroom 8C, 8th Floor<br>Los Angeles, CA 90012 |

## NOTICE

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 3, 2017, at 9:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 8C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Regal Beloit Corporation ("RBC") will and hereby does move to dismiss all claims for relief described in the Complaint, or alternatively, to transfer this action to the U.S. District Court for the District of Columbia.

As a threshold matter, the Complaint is based entirely on alleged violations of a consent decree with the federal government to which Plaintiffs are not parties. Plaintiffs therefore lack standing to assert these claims as a matter of law, making the Complaint subject to dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Dismissal is also warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) because the allegations of Plaintiffs' Complaint otherwise fail to state a claim under either federal or state law. Alternatively, pursuant to 28 U.S.C. § 1404(a), this action should be transferred to the U.S. District Court for the District of Columbia. That court not only entered the consent decree upon which Plaintiffs' Complaint is based but also retained jurisdiction to interpret and enforce the consent decree's provisions.

This Motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed declaration, the concurrently filed Request for Judicial Notice, and such other argument as may be presented at or before the hearing on this Motion. This Motion is made following the conference of counsel pursuant to Local Rule 7-3—which began on January 13, 2017, continued on January 20, 2017, and has since been the subject of written follow-up communications. [*See* Lockerby Decl., ¶¶ 2-3.] During the foregoing exchange, counsel for the parties were not able to reach a resolution of the issues presented by this Motion. [*See id.*]

\\

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
Case No. 2:16-cv-08027-DMG (JPRx)

-1-

4825-5456-2624.9

1    Dated:  January 27, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOLEY & LARDNER LLP**
Michael J. Lockerby
Alan D. Rutenberg
Benjamin R. Dryden
A. Joel Richlin

_____
Michael J. Lockerby
Attorneys for Defendant REGAL BELOIT
CORPORATION, a Wisconsin corporation

### MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL ALLEGATIONS ........................................................................ 4

III. LEGAL STANDARD .................................................................................. 5

IV.  ARGUMENT ................................................................................................ 6

    A.   As a Matter of Law, Plaintiffs Lack Standing to Enforce the Consent Decree Upon Which All of Their Claims Are Based ................................. 6

    B.   The Complaint Does Not Allege Any Predatory or Tortious Conduct By RBC That Occurred During the Applicable Limitations Periods. ......... 8

        1.   The applicable limitations periods are four years for Counts One and Two, and two years for Counts Three and Four. ....................................................................................... 8

        2.   The Complaint alleges no actionable conduct by RBC that is within either the two-year or the four-year limitations periods. ........................................................................ 9

        3.   As a matter of law, RBC's alleged failure to supply or support SNTech does not state a claim for attempted monopolization. ..................................................................... 11

        4.   The *Aspen Skiing* exception to the holdings of *Trinko* and *Pacific Bell* does not apply to Plaintiffs' allegations. ............ 14

        5.   RBC's alleged failure to support and supply SNTech was not an "unfair" business practice under Cal. Bus. & Prof. Code § 17200. .............................................................. 16

        6.   Public policy warrants interpreting the Sherman Act as *not* imposing an antitrust duty to aid competitors. ........................ 17

    C.   Plaintiffs' Allegations that RBC Deliberately Violated the Consent Decree Without Repercussions Are Implausible. ....................... 18

    D.   Plaintiffs Are Not Direct Purchasers From RBC, So Their Claim for Monetary Relief Under the Sherman Act Should Be Dismissed. ............. 20

    E.   Counts Three and Four Should Be Dismissed Because They Consist of Conclusory Statements and Are Barred By the Competition Privilege. ................................................................................................. 21

    F.   If the Complaint Is Not Dismissed, the Case Should Be Transferred to the Washington, D.C. District Court That Entered the Consent Decree ... 23

V.   CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................. 14

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585, 105 S. Ct. 2847, 86 L. Ed. 2d 467 (1985) ................................ 14, 15, 16

*Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*,
  __ U.S. __, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013) ................................... 6

*Bell Atlantic Co. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ 18, 20

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ................................... 7

*Cafasso v. General Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................. 6

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001) .................................................................. 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................ 16

*Complete Ent. Res. LLC v. Live Nation Enter., Inc.*,
  No. CV 15-9814 DSF, 2016 U.S. Dist. LEXIS 86414 (C.D. Cal. May 11, 2016) ........................................................................................... 10

*Conder v. Home Savings of America*,
  680 F. Supp. 2d 1168 (C.D. Cal. 2010) ...................................................... 6, 22

*Dahl, Inc. v. Roy Cooper Co.*,
  448 F.2d 17 (9th Cir. 1971) ................................................................... 7

*Delaware Valley Surgical v. Johnson & Johnson*,
  523 F.3d 1116 (9th Cir. 2008) ................................................................ 20

*Della Penna v. Toyota Motor Sales, USA, Inc.*,
  11 Cal. 4th 376 (1995) ........................................................................ 22

*Dichter-Mad Family Partners, LLP v. United States*,
    707 F. Supp. 2d 1016 (C.D. Cal. 2010) ...................................................... 20

*Dreiling v. Am. Express Co.*,
    458 F.3d 942 (9th Cir. 2006) ...................................................................... 9

*EMI Limited v. Bennett*,
    738 F.2d 994 (9th Cir. 1984) ...................................................................... 5

*Express, LLC v. Fetish Group, Inc.*,
    464 F. Supp. 2d 965 (C.D. Cal. 2006) ........................................................ 8

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016) .......................................... 21

*Goulart v. United Airlines, Inc.*,
    No. C 94-1751 SC, 1994 U.S. Dist. LEXIS 21856 (N.D. Cal. Sept. 28,
    1994) ................................................................................................. 23, 24

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ............................ 20

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ...................................................................... 6

*Joint Stock Co. v. Riviera Travel & Tours, Inc.*,
    No. CV 11-8362-BRO, 2014 U.S. Dist. LEXIS 87318 (C.D. Cal. June 25,
    2014) ........................................................................................................... 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 18

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 Fed. App'x 554 (9th Cir. 2008) .......................................................... 17

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) .................................................................. 20

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) .................................................................. 15

*North Star Gas Co. v. PG&E*,
    No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684 (N.D. Cal. Sept.
    26, 2016) ................................................................................................... 14

*Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438, 129 S. Ct. 1109, 172 L. Ed. 2d 836 (2009) ...................................... 13, 14

*Perinatal Med. Group, Inc. v. Children's Hosp. Cent. Cal.*,
  No. CV F 09-1273 LJO GSA, 2010 U.S. Dist. LEXIS 36694 (E.D. Cal.
  Apr. 14, 2010) ........................................................................................................ 14

*Rafferty v. NYNEX Corp.*,
  744 F. Supp. 324 (D.D.C. 1990), *aff'd in relevant part*, 60 F.3d 844 (D.C.
  Cir. 1995) ................................................................................................................ 6

*Rebel Oil Co., v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................... 8, 12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ................................................................................. 3

*Ryoo Dental, Inc. v. Han*,
  No. SACV 15-308-JLS, 2015 U.S. Dist. LEXIS 90085 (C.D. Cal. July 9,
  2015) ........................................................................................................................ 8

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2003) ............................................................................... 6

*Sierra Nat'l Ins. Holdings, Inc. v. Altus Fin., S.A.*,
  No. CV 01-01338 AHM, 2001 U.S. Dist. LEXIS 22301 (C.D. Cal. June
  20, 2001) ................................................................................................................ 23

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092, 1102 (C.D. Cal. 2015) ...................................................... 6, 22

*Van Buskirk v. CNN*,
  284 F.3d 977 (9th Cir. 2002) ................................................................................. 3

*Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ........... 3, 11, 12, 13, 14, 15, 17

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................................... 5

**Statutes**

15 U.S.C. § 15b .......................................................................................................... 2, 8

28 U.S.C. § 1391(b)(3) .............................................................................................. 24

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER

-iv-                    Case No. 2:16-cv-08027-DMG (JPRx)

28 U.S.C. § 1404(a) ................................................................................ 6, 8, 25

Cal. Bus. & Prof. Code § 17208 ................................................................. 2, 8

Cal. Civ. Proc. Code § 339(1) ..................................................................... 2, 9

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................... 18

Fed. R. Civ. P. 12(b)(1) ............................................................................... 5, 24

Fed. R. Civ. P. 12(b)(6) .......................................................................... 4, 6, 24

U.S. Dep't of Justice, *Antitrust Division Policy Guide to Merger Remedies*
  (June 2011), at 19 n.41, *available at*
  https://www.justice.gov/sites/default/files/atr/legacy/2011/06/17/272350.
  pdf ................................................................................................... 18, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court has now become the third forum in which Plaintiffs or their affiliates recently have been or are now embroiled in litigation with RBC.  In 2014, the U.S. District Court for the Western District of Wisconsin entered a $1.15 million judgment for RBC against two of Plaintiffs' affiliated companies.  [*See* RJN, Lockerby Decl., ¶ 2, Ex. A.]  That judgment has not yet been paid, so RBC has since brought claims in Los Angeles County Superior Court to enforce the judgment.  [*See* RJN, Lockerby Decl., ¶ 3, Ex. B.]  Meanwhile, in the Complaint that they recently filed in this Court, Plaintiffs seek treble damages based on an alleged ***attempt*** by RBC to monopolize an alleged market for electric spa pump motors ("spa motors").  RBC's agreement to a consent decree with the United States Department of Justice ("DOJ") and RBC's alleged violations of the consent decree are the sole bases upon which Plaintiffs seek to hold RBC liable under federal antitrust law and various California causes of action.

The consent decree, according to Plaintiffs, resulted from RBC's attempt in 2010 to purchase its alleged largest competitor for spa motors.  [Compl. ¶ 3.]  The DOJ, however, challenged this proposed merger on antitrust grounds.  [Compl. ¶ 4.]  To resolve the DOJ's challenge, RBC agreed in 2011 to divest its own spa motor business to a third party, SNTech, Inc. ("SNTech").  [Compl. ¶¶ 4-5.]  As part of this divestiture agreement, RBC stipulated to a consent decree that required RBC to provide transitional support services to SNTech for a period of time following the divestiture.  [Compl. ¶ 6.]  These transitional support services included providing SNTech with technical assistance and supplying it with raw materials and motor components necessary to manufacture spa motors.  [*Id.*]

In a typical case, a company is considered to be ***complying*** with the antitrust laws if—in response to an antitrust challenge by the DOJ—the company agrees to divest a business unit that the DOJ says competes with the business being acquired.  But this is not what Plaintiffs allege.  To the contrary, they claim that RBC's agreement to divest its

own spa motor business to SNTech as required by the DOJ was actually part of RBC's nefarious plan to monopolize the alleged market for spa motors.  According to Plaintiffs, RBC agreed to the divestiture "knowing full well" that it would not honor its commitments to either the DOJ or the federal court that entered the consent decree. [Compl. ¶ 69.]

Even if Plaintiffs could prove these allegations, they would not be actionable for at least four reasons.  First and foremost, Plaintiffs lack standing to allege violations of a consent decree to which they are not parties.  Only the DOJ, the other party to the consent decree, would have standing to assert its alleged violation.  On that basis alone, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction.

Second, Plaintiffs' lawsuit is not timely.  The final consent decree that governed RBC's divestiture of its spa motor business was entered on November 1, 2011 [Compl. ¶ 6]—some four years, eleven months, and 26 days before the Complaint was filed in this case.  The limitations period for a federal antitrust claim (Count One) is four years.  15 U.S.C. § 15b.  Plaintiffs' claim for unfair business practices in violation of California Business and Professions Code § 17200 (Count Two) is also subject to a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208.  The limitations period for claims of tortious and negligent interference under California law (Counts Three and Four) is even shorter—just two years.  Cal. Civ. Proc. Code § 339(1).  Accordingly, to the extent that Plaintiffs' claims are based on RBC's alleged conduct before entering into the consent decree, Plaintiffs' claims are untimely and should be dismissed.  Moreover, Plaintiffs have not alleged any anticompetitive or tortious conduct after the entry of the consent decree that falls within the statute of limitations.  Accordingly, all of Plaintiffs' claims are untimely and should be dismissed.

Third, the deficiencies in the Complaint could not be cured even if Plaintiffs had alleged or could allege any anticompetitive or tortious conduct on the part of RBC after entry of the consent decree during the last two (or four) years.  The conduct at issue, according to the Complaint, is limited to RBC's alleged failures to provide the buyer of

its spa motor business (SNTech) with adequate technical assistance or raw materials and components as required by the consent decree.  [Compl. ¶ 69.]  The insurmountable hurdle that Plaintiffs face is that, under controlling Supreme Court precedent, these alleged "failures" are not grounds for an antitrust complaint in the first place.  With rare exceptions not applicable here, the antitrust laws permit businesses to refuse to provide technical support or to supply raw materials to their competitors.  Thus, the Supreme Court has repeatedly made clear that in situations where a company like RBC is compelled by law to provide assistance to its rivals, an alleged failure to provide this assistance does not support a claim for violation of Section 2 of the Sherman Act.  *See Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-10, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ("*Trinko*").

Fourth, Plaintiffs' Complaint is—on its face—implausible.  The Complaint alleges that RBC entered into a consent decree with no intention of complying with it and that RBC has since deliberately violated this consent decree with no repercussions whatsoever, despite detailed provisions in the consent decree allowing the DOJ to investigate and the court to punish any violations.  These allegations simply defy credible belief.

In any event, this Court would not be the proper forum to resolve these claims.  Only the court that entered the consent decree—the U.S. District Court for the District of Columbia—can determine the merits of Plaintiffs' allegations.  The consent decree specifically provides that the U.S. District Court for the District of Columbia "retains jurisdiction to enable any party to this Final Judgment to apply to this Court . . . to carry out or construe this Final Judgment . . . to enforce compliance, and to punish violation of its provisions."[1]  Neither one of Plaintiffs is a "party to this Final Judgment."  And the

---

[1] [RJN, Lockerby Decl., ¶ 4, Ex. C at 20 (emphasis added).]  This Court may take judicial notice of the consent decree without converting the pending motion into a motion for summary judgment because the consent decree is a readily verifiable court filing and was referenced extensively in the Complaint.  [*See* Compl. ¶¶ 6, 45-50]; *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Van*

court that retained jurisdiction "to carry out or construe this Final Judgment . . . to enforce compliance, and to punish violation of its provisions" is not the U.S. District Court for the Central District of California.  Therefore, if this Court declines to dismiss Plaintiffs' Complaint outright, it should transfer the case to the U.S. District Court for the District of Columbia.  That court is best situated to determine whether RBC has complied with the consent decree.  In fact, it has specifically retained jurisdiction to do so.

## II.    FACTUAL ALLEGATIONS

The Complaint alleges the following facts, which Federal Rule of Civil Procedure 12(b)(6) requires be accepted as true for purposes of RBC's motion to dismiss.  On December 12, 2010, RBC agreed to acquire the electric motors business of A.O. Smith Corporation ("AOS"), a business that included the manufacture of spa motors.  [Compl. ¶¶ 2-3, 38.]  Some eight months after this deal was announced—but before the merger had closed—the DOJ sued RBC, alleging that a combination of AOS's spa motors business with RBC's existing spa motors business would violate the antitrust laws. [Compl. ¶¶ 4, 41-44.]  RBC agreed to resolve the DOJ's lawsuit by divesting its own spa motors business to a third party, SNTech.  [Compl. ¶¶ 5, 45-50.]

On November 1, 2011, the U.S. District Court for the District of Columbia entered a final consent decree that governed RBC's divestiture agreement with the DOJ.  [Compl. ¶ 6.]  As part of this consent decree, RBC was ordered to enter into three ancillary agreements with SNTech—a "transition services agreement" and two separate "supply agreements."  Plaintiffs allege that these agreements required RBC to provide SNTech with certain technical, engineering, and materials-related support for a period of up to a year following the entry of the consent decree.  [Compl. ¶¶ 6, 50.]

Plaintiffs allege that RBC failed to honor its commitments under the consent decree.  According to the Complaint, RBC "provid[ed] faulty raw materials and components to SNTech, and fail[ed] to provide the technical and engineering assistance

*Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-4-                     Case No. 2:16-cv-08027-DMG (JPRx)

1    needed to ensure that SNTech could develop, manufacture, and sell the former RBC spa

2    motors." [Compl. ¶ 7; *see also id.* ¶¶ 55-57.]

3         Following the divestiture, SNTech failed to sustain the divested spa motor

4    business. Plaintiffs allege that SNTech's spa motors "failed with such a high regularity

5    and were available in such limited quantities that consumers such as Plaintiffs . . . were

6    left with no choice but to stop purchasing SNTech motors." [Compl. ¶ 59.] Plaintiffs

7    also allege that whenever plaintiff Lloyd's Equipment, Inc. asked SNTech what was

8    causing these problems, "SNTech would reply that the source of the problems was RBC."

9    [Compl. ¶ 58.]

10         The "injury" alleged by Plaintiffs is that one of them, Lloyd's Equipment, Inc.

11    ("LE"), became unable to supply spa pumps (a product that includes spa motors) to the

12    other plaintiff. That other plaintiff, Lloyd's Material Supply Company, Inc. ("LMS"),

13    alleges that it therefore was forced to purchase spa motors from alternate vendors at a

14    higher price than it was used to paying. [Compl. ¶ 9.] Neither plaintiff alleges that it has

15    ever purchased any products directly from RBC. [Compl. ¶¶ 8, 9.]

16         Several years later, in December 2014, SNTech declared bankruptcy. [Compl. ¶¶

17    7, 60.] SNTech no longer manufactures spa motors. [Compl. ¶ 60.] Plaintiffs do not

18    allege that RBC caused SNTech to become insolvent or to exit the spa motors market.

19    ### III.  LEGAL STANDARD

20         Under Federal Rule of Civil Procedure 12(b)(1), the Complaint should be

21    dismissed for lack of subject-matter jurisdiction if Plaintiffs lack standing to obtain the

22    relief requested. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *EMI Limited v.*

23    *Bennett*, 738 F.2d 994, 996 (9th Cir. 1984). Standing is a constitutional principle that

24    requires "a plaintiff to have a personal stake in the outcome of a case to warrant his

25    invocation of federal-court jurisdiction and to justify exercise of the court's remedial

26    powers on his behalf." *EMI*, 738 F.2d at 996 (quotation and emphasis omitted). Because

27    RBC has asserted a facial challenge to subject-matter jurisdiction, the Court assumes that

28    the allegations in the Complaint are true and considers whether the allegations are

1  sufficient on their face to confer standing on Plaintiffs. *See Safe Air for Everyone v.*
2  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2003).

3  　　Under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint should be
4  dismissed if its factual allegations, together with all reasonable inferences taken
5  therefrom, do not state a plausible claim for relief. *See Cafasso v. General Dynamics C4*
6  *Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). The Court need not "accept as true
7  unreasonable inferences or conclusory legal allegations cast in the form of factual
8  allegations," and dismissal is proper where a complaint lacks a "cognizable legal theory."
9  *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1102 (C.D. Cal.
10 2015). Additionally, the Court "should not accept threadbare recitals of a cause of
11 action's elements, supported by mere conclusory statements." *Conder v. Home Savings*
12 *of America*, 680 F. Supp. 2d 1168, 1172 (C.D. Cal. 2010) (citing *Ashcroft v. Iqbal*, 556
13 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The grounds on which dismissal
14 under Federal Rule of Civil Procedure 12(b)(6) is proper include where the allegations in
15 the complaint show that the statute of limitations has expired. *See Jablon v. Dean Witter*
16 *& Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

17 　　Additionally, under 28 U.S.C. § 1404(a), the Court may transfer this case to
18 another district court if doing so would serve the convenience of parties and witnesses
19 and otherwise promote the interests of injustice. 28 U.S.C. § 1404(a); *see generally*
20 *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, __
21 U.S. __, 134 S. Ct. 568, 581 & n.6, 187 L. Ed. 2d 487 (2013).

22 ## IV.　ARGUMENT

23 ### A.　As a Matter of Law, Plaintiffs Lack Standing to Enforce the
24 ### Consent Decree Upon Which All of Their Claims Are Based.

25 　　Without addressing the merits of the Complaint, this Court can and should dismiss
26 Plaintiffs' antitrust claims for lack of standing alone. "[A] private party cannot premise a
27 treble damage action under [the antitrust laws] upon violations of a government consent
28 decree." *Rafferty v. NYNEX Corp.*, 744 F. Supp. 324, 328 (D.D.C. 1990), *aff'd in*

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-6-　　　Case No. 2:16-cv-08027-DMG (JPRx)

1   *relevant part*, 60 F.3d 844, 849 (D.C. Cir. 1995) (collecting cases).  In this case, the

2   consent decree that Plaintiffs claim RBC violated says nothing about being enforced by

3   private parties.  To the contrary, it provides for enforcement only by "any party to this

4   Final Judgment"—*i.e.*, only by the DOJ and RBC (or possibly AOS).  [RJN, Lockerby

5   Decl., ¶ 4, Ex. C at 20.]  Thus, even if the consent decree implicitly serves the purpose of

6   benefitting private parties like Plaintiffs, they do not have standing to enforce it.  This has

7   been well settled law for more than 40 years.  *See Blue Chip Stamps v. Manor Drug*

8   *Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ("[A] consent decree

9   is not enforceable directly or in collateral proceedings by those who are not parties to it

10  even though they were intended to be benefited by it.").

11        Even before the Supreme Court decided *Blue Chip Stamps*, the Ninth Circuit held

12  that a federal court cannot reach the merits of an antitrust case that is based upon a

13  defendant's alleged failure to comply with a DOJ consent decree.  In *Dahl, Inc. v. Roy*

14  *Cooper Co.*, 448 F.2d 17 (9th Cir. 1971), the Ninth Circuit addressed the legal

15  sufficiency of allegations by the plaintiff, a movie theatre operator, that the defendants

16  had violated the antitrust laws by failing to comply with a consent decree that certain of

17  the defendants had entered into with the DOJ concerning how films would be offered to

18  theater operators.  With little hesitation, the Ninth Circuit held that it "need not reach the

19  merits of this contention" because "[o]nly the Government can seek enforcement of its

20  consent decrees."  *Id.* at 20.  This controlling authority warrants dismissal of  Plaintiffs'

21  Complaint for lack of standing.  Plaintiffs' lack of standing to assert their federal antitrust

22  claims also bars them from pursuing their state-law claims in this Court.  *See generally*

23  *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) ("A party seeking to

24  commence suit in federal court must meet the stricter federal standing requirements of

25  Article III.").

26        Even if Plaintiffs had standing to enforce the consent decree, their Complaint

27  otherwise fails to state a claim under any of the legal theories that they have asserted, as

28  discussed in the sections that follow.  Moreover, this Court is not the proper forum in

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-7-              Case No. 2:16-cv-08027-DMG (JPRx)

which to resolve Plaintiffs' claim that RBC has violated the consent decree.  The U.S. District Court for the District of Columbia specifically retained jurisdiction through the year 2021 to enforce the consent decree and punish any alleged violations.  Transfer pursuant to 28 U.S.C. § 1404(a) would therefore be warranted even if Plaintiffs had standing and even if the Complaint stated any viable cause of action.

### B.   The Complaint Does Not Allege Any Predatory or Tortious Conduct By RBC That Occurred During the Applicable Limitations Periods.

#### 1.   The applicable limitations periods are four years for Counts One and Two, and two years for Counts Three and Four.

The Complaint asserts four Counts against RBC.  Count One alleges that RBC attempted to monopolize a market for spa motors in violation of Section 2 of the Sherman Act. [Compl. ¶¶ 65-76.]  Count Two alleges that RBC engaged in "unfair" business practices in violation of California Business and Professions Code § 17200.  [Compl. ¶¶ 77-80.]  Count Three alleges that RBC tortiously interfered with Plaintiffs' prospective economic relationship with each other.  [Compl. ¶¶ 81-88.]  And Count Four alleges that RBC negligently interfered with Plaintiffs' prospective economic relationship with each other.  [Compl. ¶¶ 89-96.]  For these claims to be timely, RBC must have taken or caused some action[2] to harm Plaintiffs within the applicable limitations period.

For Counts One and Two, the applicable limitations period is four years.  15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 17208.  For Counts Three and Four, the

---

[2] *See Rebel Oil Co., v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (attempted monopolization requires "predatory or anticompetitive conduct" directed toward the destruction of competition); *Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (an unfair practice under § 17200 requires "any practice whose harm to the victim outweighs its benefits") (quotation omitted); *Joint Stock Co. v. Riviera Travel & Tours, Inc.*, No. CV 11-8362-BRO (AJWx), 2014 U.S. Dist. LEXIS 87318, at *47 (C.D. Cal. June 25, 2014) (intentional interference requires "intentional acts . . . designed to disrupt the [economic] relationship"); *Ryoo Dental, Inc. v. Han*, No. SACV 15-308-JLS (RNBx), 2015 U.S. Dist. LEXIS 90085, at *7 (C.D. Cal. July 9, 2015) (negligent interference requires "the defendant's negligence").

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER

-8-              Case No. 2:16-cv-08027-DMG (JPRx)

applicable limitations period is two years.  Cal. Code Civ. Proc. § 339(1).

## 2. __The Complaint alleges no actionable conduct by RBC that is within either the two-year or the four-year limitations periods.__

The harm of which Plaintiffs complain was allegedly caused by RBC's alleged failure to fulfill its obligations under the consent decree that resolved the DOJ's antitrust challenge to RBC's acquisition of AOS's electric motor business.  Specifically, the Complaint alleges that RBC did the following five things:

1. On December 12, 2010, RBC agreed to acquire AOS's electric motor business, which included AOS's spa motor business.  [Compl. ¶¶ 5, 38.]

2. On or before November 1, 2011, RBC agreed to a consent decree with the DOJ that required RBC to divest its spa motors business and provide transitional support to SNTech.  [Compl. ¶¶ 5-6, 45-50.]

3. After November 1, 2011, RBC closed on its acquisition of AOS's electric motor business.  [Compl. ¶ 51.][3]

4. Within ten days of November 1, 2011, RBC sold its preexisting spa motors business to SNTech.  [Compl. ¶ 50.][4]

_____

[3] Although it is not necessary to do so, the Court can take judicial notice that this allegation is incorrect.  *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings are subject to judicial notice on a motion to dismiss).  In fact, RBC closed on its acquisition of AOS's electric motor business several months earlier, on August 22, 2011, while the consent decree was being formalized.  [*See* RJN, Lockerby Decl., ¶ 5, Ex. D.]

[4] Similarly, the Court can take judicial notice that this divesture actually took place several months before November 1, 2011.  The Final Judgment provides that "RBC is ordered and directed, within ten calendar days after the Court signs the Hold Separate Stipulation and Order in this matter, to divest the [spa motors business] Assets."  [RJN, Lockerby Decl., ¶ 4, Ex. C at 7.]  This "Hold Separate Stipulation and Order" was actually signed by the Court on August 19, 2011.  [*See* RJN, Lockerby Decl., ¶ 6, Ex. E.]  Taking judicial notice of the Hold Separate Stipulation and Order is appropriate without converting the present motion to a motion for summary judgment because this Order is a readily verifiable court filing, and because it is referenced extensively in the Final Judgment that is cited throughout the Complaint.

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-9-
Case No. 2:16-cv-08027-DMG (JPRx)

4825-5456-2624.9

5. Following the divestiture, RBC allegedly "supplied SNTech with faulty and non-operational raw materials and components" and "failed to provide SNTech with the technical and engineering assistance" required under the consent decree.  [Compl. ¶¶ 56-57.]  Plaintiffs do not allege when these actions supposedly took place, but they do allege that the transitions services and supply agreements were to last up to a year after entry of the consent decree. [Compl. ¶ 50.]

Of these five actions, ***none*** took place within two years of the October 27, 2016 filing of the Complaint.  Therefore, Counts Three and Four should be dismissed in their entirety.

Nor do Plaintiffs allege that any of these five actions took place on or after October 27, 2012—that is, within four years of the filing of the Complaint.  Accordingly, Counts One and Two should be dismissed as well.  *See, e.g.*, *Complete Ent. Res. LLC v. Live Nation Enter., Inc.*, No. CV 15-9814 DSF (AGRx), 2016 U.S. Dist. LEXIS 86414, at *3 (C.D. Cal. May 11, 2016) ("It cannot be the case that if a merger leads to monopoly power then anything anticompetitive that the newfound monopolist does is a 'continuing violation' that began with the merger, allowing the merger to be challenged indefinitely under section 2 of the Sherman Act.  If that were true, the statute of limitations . . . would be written out of the law.").

Although Plaintiffs do not allege that RBC did ***anything*** within the applicable limitations periods, drawing all possible inferences in Plaintiffs' favor, there is at most only one alleged action—the alleged failure to supply SNTech with adequate materials and assistance for "up to a year" after November 1, 2011—that conceivably took place within four years of the filing of the Complaint.  According to the Complaint, the transitions services and supply agreements between RBC and SNTech lasted "up to a year" after November 1, 2011—*i.e.*, until November 1, 2012.  The Complaint does not specifically allege that RBC failed to provide materials or support to SNTech as required under the DOJ consent decree during the five-day period at the tail end of the supply and transitions agreements that was within four years of the filing of the Complaint (*i.e.*, from

October 27 through November 1, 2012).[5]  Even if Plaintiffs had made or could make such a claim to get within the statute of limitations, however, Counts One and Two would still be subject to dismissal.  Well-established Supreme Court precedent holds that RBC's alleged failure to supply or support SNTech is not grounds for a federal antitrust claim or, by the same token, for a claim under California Business and Professions Code § 17200.

**3.     As a matter of law, RBC's alleged failure to supply or support SNTech does not state a claim for attempted monopolization.**

In its 2004 decision in *Trinko*, the U.S. Supreme Court rejected the theory on which Plaintiffs' claims for violation of Sherman Act Section 2 are based, *i.e.*, that a failure to comply with a legal requirement to aid one's competitors can give rise to antitrust liability.  The case involved a local telephone carrier.  Until 1996, there was typically only one local telephone carrier operating in any given region.  These local carriers had lawful monopolies over the provision of local telephone service in their respective service areas.  In 1996, however, Congress decided to change the law to promote competition for local telephone service.  Thus, the Telecommunications Act of 1996 required so-called "incumbent" local carriers to share their networks with their competitors.  Among other things, these incumbent carriers became required to let so-called "competitive" local carriers place service orders to obtain the same access to end-users that the incumbent carriers have.  This obligation is reflected not only in federal statutes but also in an array of federal and state regulatory approvals as well as in private agreements between the incumbent and competitive carriers.  *See generally* 540 U.S. at

---

[5] The Complaint also does not allege that Plaintiffs were specifically injured by any supposed failure of RBC to provide materials or support to SNTech during this five-day tail end period.  Plaintiffs would need to make such a showing for their claims to be timely.  Moreover, the transition service and supply agreement obligations referenced in the Complaint actually arose months before the November 1, 2011 entry of the consent decree, since the Hold Separate Stipulation and Order required RBC to "abide by and comply with the provisions of the proposed Final Judgment . . . from the date of the signing of this Hold Separate Stipulation and Order by the parties," which occurred on August 17, 2011.  [*See* RJN, Lockerby Decl., ¶ 6, Ex. E at 7, 11.]

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-11-     Case No. 2:16-cv-08027-DMG (JPRx)

402-03.

In 1999, one incumbent carrier, Verizon, stopped fulfilling its competitors' service orders in violation of federal and state telecommunications law, allegedly as part of an effort to monopolize the market for local telephone service.  A customer of one of the competing carriers sued Verizon, alleging that Verizon's failure to abide by federal network-sharing requirements constituted predatory, anticompetitive conduct under Section 2 of the Sherman Act (*id.* at 404-05)—the same statute under which Plaintiffs bring Count One.  *See generally Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F. 3d 1421, 1433 (9th Cir. 1995) (a claim for attempted monopolization under Section 2 of the Sherman Act requires "predatory or anticompetitive conduct").

The Supreme Court rejected the plaintiff's claims in *Trinko*.  The Court took for granted that Verizon had violated a host of federal obligations requiring it to support rival telecommunications carriers.  "That Congress created these duties, however, does not automatically lead to the conclusion that they can be enforced by means of an antitrust claim." *Trinko*, 540 U.S. at 406.  To the contrary, the Court affirmed a longstanding principle of antitrust law that, as a general matter, businesses do not have any antitrust duty to aid their competitors.  *Id.* at 411; *see also id.* at 408 ("[T]he Sherman Act 'does not restrict the long recognized right of a trader or manufacturer . . . freely to exercise his own independent discretion as to parties with whom he will deal.'") (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S. Ct. 465, 63 L. Ed. 992 (1919) (alteration omitted)).  As the Court recognized in *Trinko*, Verizon may well have been violating a duty to aid its business rivals under the Telecommunications Act, orders of the FCC and state public utility commissions, and its private agreements with other carriers. Nevertheless, Verizon's decision not to aid its business rivals was not an antitrust violation because, for purposes of Section 2 of the Sherman Act, a company generally has no duty to aid its rivals.

*Trinko* controls the outcome here.  Under *Trinko*, a party does not violate Section 2 of the Sherman Act by violating a law, order, or agreement that requires it to cooperate

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-12-            Case No. 2:16-cv-08027-DMG (JPRx)

with its competitors.  Naturally, there will often be other consequences for violating a law, order, or agreement,[6] but *Trinko* holds that liability under the Sherman Act is not among these possible consequences.  Thus, even if it were true that RBC failed to supply materials and provide technical support to SNTech in violation of a federal court order, these alleged failures would not, as a matter of law, constitute a violation of the Sherman Act.

If there could be any question whether *Trinko* controls, the Supreme Court answered it five years later with a case even more directly on point to the facts here, *Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 129 S. Ct. 1109, 172 L. Ed. 2d 836 (2009).  The *Pacific Bell* litigation resulted from temporary regulations that the FCC had adopted as part of an effort to promote competition for Internet services.  These regulations required incumbent telecommunications carriers to provide wholesale transmission services to independent Internet providers.  The FCC later abandoned these regulations.  As a condition for a subsequent merger, however, AT&T entered into an administrative consent agreement with the FCC whereby AT&T agreed to continue providing wholesale transmission services to independent Internet providers as if the old FCC regulations still remained in place.  In the meantime, a group of competing Internet providers became unhappy with the price of AT&T's wholesale transmission services and brought suit under Section 2 of the Sherman Act—the same statute on which Count One of Plaintiffs' Complaint is based—alleging that AT&T was setting prices too high in an effort to monopolize the provision of Internet services.  *Id.* at 443.  As in *Trinko*, the Supreme Court rejected the plaintiffs' claim in *Pacific Bell*:

> A straightforward application of our recent decision in *Trinko* forecloses any challenge to AT&T's wholesale prices . . . In this case, as in *Trinko*, the defendant has no antitrust duty to deal with its rivals at wholesale; ***any such duty arises only***

---

[6] Here, for example, a possible consequence for any breach by RBC of its obligations under the consent decree would have included an enforcement action by the DOJ in the court that entered the consent decree.

*from FCC regulations, not from the Sherman Act*.

*Id.* at 449-50 (emphasis altered); *see also id.* at 457 ("*Trinko* holds that a defendant with no antitrust duty to deal with its rivals has no duty to deal under the terms and conditions preferred by those rivals."); *accord North Star Gas Co. v. PG&E*, No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684, at *78-*82 (N.D. Cal. Sept. 26, 2016) (a gas company's alleged failure to provide transport services as required by contract and state regulations did not support a claim under Section 2 of the Sherman Act); *Perinatal Med. Group, Inc. v. Children's Hosp. Cent. Cal.*, No. CV F 09-1273 LJO GSA, 2010 U.S. Dist. LEXIS 36694, at *23 (E.D. Cal. Apr. 14, 2010) ("[A] duty to deal arising from state law does not establish a duty to deal for antitrust purposes").

Under the principles of *Trinko* and *Pacific Bell*, Count One of the Complaint should be dismissed. Like AT&T in *Pacific Bell*, RBC entered into a consent decree as a prerequisite to consummating a merger. The consent decree at issue in this case required RBC to provide limited support to one of its competitors. Under the regulations and consent decree at issue in *Pacific Bell*, AT&T's competitors were not satisfied with AT&T's support. The Supreme Court held, however, that the competitors had not stated a valid antitrust claim. The same reasoning applies here. Simply put, even if a federal law or order requires a company to provide some support to its competitors in an effort to promote competition, that company's failure to provide such support does not state a claim under Section 2 of the Sherman Act as a matter of law. *See generally Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) ("Competitors are not required to engage in a lovefest; indeed, even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws.") (quotation omitted). In short, Plaintiffs have not stated a valid antitrust claim.

### 4. The *Aspen Skiing* exception to the holdings of *Trinko* and *Pacific Bell* does not apply to Plaintiffs' allegations.

*Trinko* does recognize a narrow exception to the general proposition that a

company has no antitrust duty to deal with its rivals.  This narrow exception does not apply here.  The exception comes from the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S. Ct. 2847, 86 L. Ed. 2d 467 (1985).  In that case, Aspen Highlands Skiing Corporation and Aspen Skiing Company, two competing ski resorts, had for years offered a joint ski lift ticket so that customers could use either resort with the same ticket.  *Aspen Skiing*, 472 U.S. at 589-91.  Aspen Skiing, the larger of the two resorts, terminated this arrangement after Aspen Highlands refused to accept a new revenue-splitting proposal based on a lower percentage of the ticket revenue.  *Id.* at 591-94.

Aspen Highlands sued Aspen Skiing, alleging that Aspen Skiing had monopolized the market for skiing in Aspen, Colorado in violation of Section 2 of the Sherman Act.  The jury returned a verdict in favor of Aspen Highlands.  Following an appeal, Aspen Skiing ultimately obtained review by the Supreme Court.  *Id.* at 595.  The Supreme Court affirmed the jury's verdict, finding sufficient evidence to support the conclusion that Aspen Skiing had violated Section 2 of the Sherman Act by refusing to continue in the joint-ticketing arrangement with Aspen Highlands.  *Id.* at 611.  Critical to the Court's decision was the fact that Aspen Skiing made "***an important change in a pattern of distribution that had originated in a competitive market*** and had persisted for several years."  *Id*. at 603 (emphasis added).

In *Trinko*, the Supreme Court took pains to clarify that "*Aspen Skiing* is at or near the outer boundary of § 2 liability."  *Trinko*, 540 U.S. at 409.  The Supreme Court stressed that *Aspen Skiing* turned on the fact that Aspen Skiing had unilaterally terminated a "***voluntary*** (and thus presumably profitable) course of dealing" under circumstances that "suggested a willingness to forsake short-term profits to achieve an anticompetitive end."  *Trinko*, 540 U.S. at 409 (emphasis altered).  Thus, the Court explained, a Sherman Act claim could not be maintained if "[t]he complaint does not allege that [the defendant] voluntarily engaged in a course of dealing with its rivals, or would ever have done so absent statutory compulsion."  *Id.; see also MetroNet Servs.*

1    *Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132-33 (9th Cir. 2004) (an antitrust duty to deal

2    with one's competitors can be found only where a defendant terminates a voluntary

3    course of dealing, refuses to deal with competitors on retail terms, or refuses to deal with

4    competitors on the same terms as other customers).

5            Here, the Complaint makes no allegation that RBC would ever have voluntarily

6    supported or supplied SNTech without a DOJ consent decree requiring RBC to do so.

7    The Complaint does not allege that RBC's obligatory dealing with SNTech was in any

8    way profitable for RBC.  Nor does the Complaint allege that RBC has ever voluntarily

9    agreed to support or supply other competitors on similar terms in the past.  Indeed, any

10   such allegation or inference would be implausible on its face, since it ordinarily is not the

11   business of companies to voluntarily support their own competitors.  This case thus does

12   not fall in the narrow *Aspen Skiing* exception to the general rule that businesses have no

13   antitrust duty to deal with their rivals.  Accordingly, RBC had no antitrust duty to supply

14   or support SNTech, such that RBC's alleged failure to do so does not state a claim under

15   Section 2 of the Sherman Act.

16           **5.      RBC's alleged failure to support and supply SNTech was not an
                        "unfair" business practice under Cal. Bus. & Prof. Code § 17200.**

17

18           Because RBC's alleged failure to support and supply SNTech does not state a

19   claim under Section 2 of the Sherman Act, it is also not actionable as an "unfair" business

20   practice under California Business and Professions Code § 17200.  To be deemed

21   "unfair" within the meaning of Cal. Bus. & Prof. Code § 17200, a business practice must

22   "threaten[ ] an incipient violation of an antitrust law, or violate[ ] the policy or spirit of

23   one of those laws . . . or otherwise significantly threaten[ ] or harm[ ] competition."  *Cel-*

24   *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

25           Here, Plaintiffs' unfair business practices claim is based on the exact same facts

26   and theories as Plaintiffs' Sherman Act claim.  [*See* Compl. ¶¶ 77-80.]  As the Ninth

27   Circuit has made clear, "[w]here . . . the same conduct is alleged to support both a

28   plaintiff's federal antitrust claims and state-law unfair competition claim, a finding that

---

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-16-          Case No. 2:16-cv-08027-DMG (JPRx)

the conduct is not an antitrust violation precludes a finding of unfair competition." *LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed. App'x 554, 557 (9th Cir. 2008); *see also Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1147 (N.D. Cal. 2011) ("Under California law, if the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason, then the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.") (quotation omitted).  Because RBC's alleged failure to support and supply SNTech does not state an antitrust claim under *Trinko* and its progeny, RBC's alleged failure to support and supply SNTech also does not state a claim for an "unfair" business practice under California Business and Professions Code § 17200.  Accordingly, Plaintiffs' Count Two should be dismissed.

### 6.  Public policy warrants interpreting the Sherman Act as *not* imposing an antitrust duty to aid competitors.

Besides being controlling, *Trinko* rests on important and well-reasoned considerations of antitrust policy.  As the Supreme Court explained, forcing one company to support its competitors may actually have the perverse result of "facilitat[ing] the supreme evil of antitrust:  collusion." *Trinko*, 540 U.S. at 408.  This is because forcing two competitors to work together aligns their incentives and creates opportunities for improper coordination and information-sharing which, ironically, might be an even worse result for competition than leaving a new competitor to fend for itself.  Forcing one company to aid its competitors may also lessen the incentive of new competitors to make beneficial investments in their own facilities.  *Id.*  Therefore, *Trinko*'s holding reflects the Supreme Court's reasoned conclusion that competition is best achieved by keeping companies competing on their own, and not by using the Sherman Act as a backdoor to enforce other federal cooperation requirements.

In this respect, it is worth noting that the DOJ's own policies relating to merger remedies underscore the *Trinko* Court's concerns about the dangers of forced cooperation.  The DOJ's *Policy Guide to Merger Remedies* stresses that supply and

support agreements entered into in connection with divestitures—like the agreements that RBC was directed to enter into with SNTech—need to be narrowly tailored to avoid unnecessarily entangling the competing firms. *See* U.S. Dep't of Justice, *Antitrust Division Policy Guide to Merger Remedies* (June 2011), at 19 n.41, *available at* https://www.justice.gov/sites/default/files/atr/legacy/2011/06/17/272350.pdf ("[C]lose and persistent ties between two or more competitors (as created by such agreements) can serve to enhance the flow of information or align incentives that may facilitate collusion or cause the loss of a competitive advantage. Therefore, supply agreements in Division decrees generally will be short-term and used as a transitional mechanism until the purchaser is able to secure another source of supply.").

Here, therefore, policy considerations counsel against lightly inferring that RBC was under an antitrust duty to aid SNTech. Such a finding would actually have the perverse effect of undermining DOJ enforcement efforts by pushing companies to work *too* closely together to effect divestitures, contrary to the informed judgment of both the Supreme Court and the DOJ's Antitrust Division.

### C. Plaintiffs' Allegations that RBC Deliberately Violated the Consent Decree Without Repercussions Are Implausible.

Plaintiffs' theory of relief is implausible on its face. If the Complaint is to be believed, RBC negotiated a consent decree with the DOJ with the deliberate intent of violating the consent decree immediately after it went into effect. [*See* Compl. ¶ 7 ("Rather than abide by the spirit and the letter of its agreement with DOJ and the court's final judgment, RBC engaged in deceptive and anticompetitive behavior by ensuring that its divestiture of spa pump motor assets to SNTech would fail . . . .").] These allegations lack the specific detail required to be plausible under *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). They are also insufficiently detailed to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *See generally Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). This Court should not accept the unsupported allegation that a publicly traded

company would fraudulently negotiate a consent decree with the DOJ with the intent of immediately dishonoring its agreement.

Nor is it plausible to believe, as the Complaint alleges, that RBC violated its obligations under the DOJ consent decree without suffering any repercussions. The consent decree includes an enforcement provision that allows the DOJ "at any time" until the year 2021 to apply to the U.S. District Court for the District of Columbia to enforce the consent decree or to punish any perceived violations.[7] The consent decree also has detailed provisions that give the DOJ the right to investigate any potential non-compliance by inspecting RBC's offices, by requesting business documents from RBC, by interviewing RBC personnel, or by serving interrogatories that RBC would have to answer under oath. [*See* RJN, Lockerby Decl., ¶ 4, Ex. C at 17-18.] Moreover, a few short months before entry of the consent decree, the DOJ issued its *Policy Guide to Merger Remedies*, stating: "If the Division concludes that a consent decree has been violated, it will institute an enforcement action." U.S. Dep't of Justice, *Antitrust Division Policy Guide to Merger Remedies* (June 2011), at 34; *see also id.* at 35 & nn.65-66 (listing examples of contempt and other proceedings the DOJ has brought in the past to enforce merger decrees). In view of the DOJ's ability to investigate RBC's compliance with the consent decree and seek punishment for any failure by RBC to live up to its obligations, Plaintiffs' allegation that RBC did anything less than what it was required to do is highly implausible.

Compounding this problem for Plaintiffs is a conspicuous admission: their entire claim against RBC is based on hearsay from SNTech in response to Plaintiffs' own complaints. [*See* Compl. ¶ 58 ("Whenever LE would complain to SNTech regarding its

---

[7] [*See* RJN, Lockerby Decl., ¶ 4, Ex. C at 20 ("This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.").]

DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-19-                    Case No. 2:16-cv-08027-DMG (JPRx)

1  inability to deliver operational electric motors for spa pumps, SNTech would reply that
2  the source of the problems was RBC.").]

3      Because Plaintiffs' Complaint does not state a plausible claim for relief, RBC
4  should not be compelled to undertake expensive discovery based on nothing more than an
5  alleged comment by a now-defunct competitor of RBC's.  *See Dichter-Mad Family*
6  *Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1052 (C.D. Cal. 2010) ("the Rule 8
7  pleading requirements prevent parties from filing complaints in order to conduct aimless
8  fishing expeditions in the hope that some helpful evidence might possibly be
9  uncovered.").  Plaintiffs are not the U.S. Department of Justice.  This Court is under no
10 obligation to allow "a plaintiff with a largely groundless claim . . . take up the time of a
11 number of other people, with the right to do so representing an *in terrorem* increment of
12 the settlement value."  *Twombly*, 550 U.S. at 558 (quotations and citations omitted).
13 Plaintiffs' Complaint is so implausible on its face that it should be dismissed.

### D.   Plaintiffs Are Not Direct Purchasers From RBC, So Their Claim for Monetary Relief Under the Sherman Act Should Be Dismissed.

16     It is well settled that only "direct purchasers"—those entities that directly purchase
17 goods from an antitrust defendant—have standing to collect money damages in an
18 antitrust case.  *See generally Delaware Valley Surgical v. Johnson & Johnson*, 523 F.3d
19 1116, 1120-21 (9th Cir. 2008) ("[O]nly direct purchasers have standing . . . to seek
20 damages for antitrust violations." (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735,
21 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977))).  Under the *Illinois Brick* doctrine, ***indirect***
22 ***purchasers*** may bring antitrust claims for ***injunctive*** relief, but only direct purchasers
23 have standing to seek monetary relief from a defendant.  *Lucas Auto. Eng'g, Inc. v.*
24 *Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998).

25     Here, Plaintiffs have not alleged that they purchased spa motors directly from
26 RBC.  To the contrary, the Complaint specifically alleges that one plaintiff, LMS,
27 purchased RBC-manufactured spa motors from three other companies ***other than*** RBC to
28 which the Complaint refers collectively as the "Alternate Vendors."  As for the other

DEFENDANT'S  MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-20-   Case No. 2:16-cv-08027-DMG (JPRx)

plaintiff, LE, the Complaint makes no allegation that it has ever purchased **any** RBC-manufactured spa motors, whether sold by RBC or by anybody else.  [*See* Compl. ¶¶ 8-9.][8]  Absent any allegation that Plaintiffs ever directly purchased spa motors from RBC, Count One for violation of Section 2 of the Sherman Act should be dismissed insofar as Plaintiffs seek to collect either actual or treble damages from RBC.

**E.  Counts Three and Four Should Be Dismissed Because They Consist of Conclusory Statements and Are Barred By the Competition Privilege.**

Even if they were not barred by the statute of limitations and subject to dismissal on other grounds, Counts Three and Four consist entirely of conclusory statements and threadbare recitations of the elements of the respective causes of action.  Count Three alleges that RBC tortiously interfered with Plaintiffs' prospective economic relationship with each other [Compl. ¶¶ 81-88], while Count Four alleges that RBC negligently interfered with Plaintiffs' prospective economic relationship with each other [Compl. ¶¶ 89-96].  From the Complaint, it is entirely unclear what factual allegations—if any—on which these Counts are based.  Accordingly, these Counts should be dismissed for failure

---

[8] Paragraph 8 of the Complaint alleges that SNTech's failure "to deliver spa motors in sufficient quantities with acceptable quality" has caused "consumers of these electric motors, such as Plaintiffs Lloyd's Material Supply Company, Inc. ('LMS') and Lloyd's Equipment, Inc. ('LE') . . . to purchase electric motors manufactured and sold by RBC *or third parties*."  [Compl. ¶ 8] (emphasis added).  Paragraph 8 does not allege that LMS purchased RBC-manufactured spa motors directly from RBC.  Interpreting Paragraph 8 as alleging that the "electric motors manufactured and sold by RBC" were purchased by LMS directly from RBC would contradict the specific allegations of Paragraph 9 of the Complaint.  Paragraph 9 alleges that "SNTech's failure to supply LE had the consequential effect of causing LE to be unable to deliver spa pumps to LMS.  In turn, LMS was compelled to purchase pumps from (1) Waterway Plastics, Inc., (2) Gecko Alliance, Inc. and (3) Balboa Water Group (the 'Alternate Vendors'), both [sic] of which use RBC motors."  [Compl. ¶ 9].  In view of this very specific allegation as to the sources from which LMS purchased RBC-manufactured spa motors, the only reasonable inference to draw from the Complaint is that Plaintiffs have not, in fact, purchased spa motors directly from RBC.  *See, e.g.*, *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016) (dismissing complaint where, among other things, "Plaintiffs' specific factual allegations contradict Plaintiffs' general allegations").

to state a meaningful claim. *See Conder v. Home Savings of America*, 680 F. Supp. 2d 1168, 1172 (C.D. Cal. 2010).

Moreover, to the extent that any meaning can be discerned from Counts Three and Four, they fail to state claims as a matter of law. RBC understands Count Three to essentially rehash Plaintiffs' Counts One and Two to allege that RBC's supposed failure to supply and support SNTech had the effect of tortiously interfering in Plaintiffs' ability to run their businesses. To the extent this allegation says anything, Plaintiffs' claim is barred by the so-called "competition privilege." Under California law, companies have an absolute right to engage in bona fide competition with their business rivals without running into tort liability.

> [I]t is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing the plaintiff, all without incurring liability.

*UMG Recordings, Inc. v. Global Eagle Enter., Inc.*, 117 F. Supp. 3d 1092, 1116 (C.D. Cal. 2015) (quoting *A-Mark Coin Co. v. General Mills, Inc.*, 148 Cal. App. 3d 312, 324 (1983)); *see also Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376, 392-93 (1995) ("[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself.") (quotation omitted). In other words, Plaintiffs' theory that RBC had a tort-law duty to aid its competitors is precisely backwards. RBC's duty under both state tort law and federal antitrust law is to ***compete with*** its competitors. Thus, where RBC has engaged in no unfair competition with SNTech or with Plaintiffs, there simply are no grounds for Plaintiffs' tortious interference claim.

Similarly, Plaintiffs' negligent interference claim is also flawed. A claim for negligent interference fails where a defendant owes the plaintiff no duty of care—a determination that is informed by, among other things, whether the defendant's conduct was intended to harm or foreseeably could have harmed the plaintiffs. *See generally Sierra Nat'l Ins. Holdings, Inc. v. Altus Fin., S.A.*, No. CV 01-01338 AHM (CWx), 2001 U.S. Dist. LEXIS 22301, at *55 (C.D. Cal. June 20, 2001). Here, where Plaintiffs are merely former customers of a competitor of RBC's, a claim for negligent interference with prospective economic relations must fail. *See id.* (dismissing negligent interference claim where the parties were "[n]ot only . . . competitors, but they also did not have any kind of dependence on the other's conduct to carry on their own respective business"). As a matter of law, Counts Three and Four both should be dismissed.

## F.   If the Complaint Is Not Dismissed, the Case Should Be Transferred to the Washington, D.C. District Court That Entered the Consent Decree.

If the Court declines to dismiss the time-barred, implausible, and legally defective Complaint for lack of standing and failure to state a claim, then the Court should transfer this case to the court that entered the consent decree:  the U.S. District Court for the District of Columbia. Where a "case requires any . . . interpretation or interference with [a] Consent Decree, the case should be transferred" to the court that originally issued the decree. *Goulart v. United Airlines, Inc.*, No. C 94-1751 SC, 1994 U.S. Dist. LEXIS 21856, at *8 (N.D. Cal. Sept. 28, 1994); *see also id.* at *10 ("Removal is proper where necessary to protect the integrity of the Consent Decree and where the issues raised cannot be separated from the relief provided by the Consent Decree.") (quotation and alteration omitted).

Here, the U.S. District Court for the District of Columbia has explicitly "retain[ed] jurisdiction to enable any party to this Final Judgment to apply to this Court at any time . . . to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions." [RJN, Lockerby Decl., ¶ 4, Ex. C at 20.] Accordingly, the U.S. District Court for the District of Columbia is the

proper forum for determining whether RBC in fact complied with the consent decree—a determination that will ultimately be required in this case if it is not dismissed.  It would be a waste of judicial resources and it would run the risk of imposing inconsistent obligations on RBC to allow Plaintiffs to challenge RBC's compliance with the consent decree in this Court, when another federal court has retained jurisdiction to make the exact same determination.

The interests of comity, orderly administration of justice, and consistency of judgments all weigh in favor of transferring this case to the U.S. District Court for the District of Columbia, the court that originally issued RBC's consent decree with the DOJ and still has jurisdiction to construe and enforce it.  That court would be a proper venue for this case under 28 U.S.C. § 1391(b)(3) because it has personal jurisdiction over RBC. [*See* RJN, Lockerby Decl., ¶ 4, Ex. C at 2 ("This Court has jurisdiction over the subject matter of and each of the parties to this action.").]  Additionally, transfer to that court would further the interests of justice, and would not unduly inconvenience Plaintiffs when compared to the court's interest in the orderly administration of justice.  *See generally Goulart*, 1994 U.S. Dist. LEXIS 21856, at *14 ("Although the court finds that a transfer of this case to the Northern District of Illinois will inconvenience plaintiffs, the court does not believe that such inconvenience outweighs the interests of justice in transferring this case . . . .").  As another federal court facing a similar situation put it: "Plaintiffs chose to request relief inextricably intermingled with the provisions of the Consent Decree; they must thus request it from the proper court."  *Id.*

## V.    CONCLUSION

Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Plaintiffs' Complaint improperly seeks to enforce a government consent decree to which Plaintiffs were never a party; it is untimely; it is implausible; it improperly seeks damages on behalf of indirect purchasers; and it improperly seeks to impose tort liability on bona fide competitive conduct.  For all of

these reasons, the Complaint rests on implausible facts and incorrect legal theories and therefore should be dismissed.

Alternatively, RBC respectfully requests that the Court transfer this case pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the District of Columbia, which is the court that entered the consent decree that Plaintiffs seek to enforce. A transfer would serve the interests of comity, would advance the orderly administration of justice, and would lessen the risks of imposing inconsistent obligations on RBC.

Dated:  January 27, 2017

**FOLEY & LARDNER LLP**
Michael J. Lockerby
Alan D. Rutenberg
Benjamin R. Dryden
A. Joel Richlin


Michael J. Lockerby
Attorneys for Defendant REGAL BELOIT
CORPORATION, a Wisconsin corporation