Stephen G. Larson (SBN 145225)
slarson@larsonobrienlaw.com
Melissa A. Meister (SBN 296744)
mmeister@larsonobrienlaw.com
**LARSON O'BRIEN LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:  (213) 436-4888
Facsimile:   (213) 623-2000

Robert J. Prata (SBN 162600)
rprata@pratadaley.com
John F. Morning (SBN 185246)
jmorning@pratadaley.com
Jeremy H. Herwitt (SBN 253861)
jherwitt@pratadaley.com
**PRATA & DALEY LLP**
515 South Figueroa Street, Suite 1515
Los Angeles, California 90071
Telephone:  (213) 622-5600
Facsimile:   (213) 622-5623

Attorneys for Plaintiffs
LLOYD'S MATERIAL SUPPLY COMPANY,
INC. and LLOYD'S EQUIPMENT, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD'S MATERIAL SUPPLY COMPANY, INC., et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>REGAL-BELOIT CORPORATION, et al.,<br><br>    Defendants. | Case No.:  2:16−cv−8027 DMG (JPRx)<br><br>Judge:  Hon. Dolly M. Gee<br><br>**PLAINTIFFS LLOYD'S MATERIAL SUPPLY COMPANY, INC. AND LLOYD'S EQUIPMENT, INC.'S OPPOSITION TO DEFENDANT REGAL-BELOIT CORPORATION'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER**<br><br>Date:       March 3, 2017<br>Time:      9:30 a.m.<br>Dept:      8C<br><br>Complaint filed:    October 27, 2016 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

Plaintiffs Lloyd's Material Supply Company, Inc. and Lloyd's Equipment, Inc. respectfully submit the following Memorandum of Points and Authorities in opposition to the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6), or Alternatively, to Transfer Pursuant to 28 U.S.C. § 1404(A) (hereinafter "Motion to Dismiss") filed by Defendant Regal-Beloit Corporation.

///

///

///

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

# TABLE OF CONTENTS

<u>Page</u>

I.      INTRODUCTION .................................................................................1

II.     THE ALLEGATIONS OF THE COMPLAINT.................................2

III.    APPLICABLE STANDARDS FOR DETERMINING A MOTION
        TO DISMISS....................................................................................4

IV.     LLOYD'S HAS STANDING TO PURSUE RELIEF BASED UPON
        RBC'S ATTEMPTS TO MONOPOLIZE THE RELEVANT
        MARKET .........................................................................................5

V.      THE CLAIMS ASSERTED BY LLOYD'S ARE TIMELY .............8

        A.      The Claims Asserted By Lloyd's Accrued Within Two
                Years Of The Filing Of This Lawsuit ............................8

        B.      The *Trinko* Decision Does Not Support RBC's Statute
                Of     Limitation Defense...............................................10

VI.     THE COMPLAINT'S ALLEGATIONS ARE PLAUSIBLE ..........11

VII.    LLOYD'S HAS ADEQUATELY ALLEGED DIRECT
        PURCHASES FROM RBC ...............................................................13

VIII.   THE STATE LAW CLAIMS ASSERTED BY LLOYD'S ARE
        VALID ...........................................................................................14

IX.     NO GOOD CAUSE EXISTS TO TRANSFER THE ACTION TO
        THE DISTRICT OF COLUMBIA ...................................................15

X.      CONCLUSION .................................................................................16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,
TO TRANSFER

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barker v. Riverside Cty. Office of Educ.*
     584 F.3d 821 (9th Cir. 2009)..........................................................................4

*Bell Atlantic Corp. v. Twombly*
     550 U.S. 544 (2007) .........................................................................11, 12, 13

*Bone v. City of Los Angeles*
     471 F. App'x 620 (9th Cir. 2012)...................................................................4

*Free FreeHand Corp. v. Adobe Systems, Inc.*
     852 F. Supp. 2d 1171 (N.D. Cal. 2012) ..........................................................6

*Goulart v. United Airlines, Inc.*
     1994 U.S. Dist. LEXIS 21856 (N.D. Cal. 1994)......................................15, 16

*Hall v. City of Santa Barbara*
     833 F.2d 1270 (9th Cir. 1986).......................................................................5

*Illinois Brick Co. v. Illinois*
     431 U.S. 720 (1977) ...................................................................................13

*La Salvia v. United Dairymen of Ariz.*
     804 F.2d 1113 (9th Cir. 1986).......................................................................9

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*
     140 F.3d 1228 (9th Cir. 1998).....................................................................13

*Oliver v. SD-3C LLC*
     751 F.3d 1081 (9th Cir. 2014).......................................................................9

*Pac. Bell Tel. Co. v. linkLine Commc'ns., Inc.*
     555 U.S. 438 (2009) ...................................................................................10

*Pool Water Prods. v. Olin Corp.*
     258 F.3d 1024 (9th Cir. 2001).......................................................................8

*UMG Recordings, Inc. v. Global Eagle Enters., Inc.*
     117 F. Supp. 3d 1092, 1116 (C.D. Cal. 2015)..............................................14

*United States v. Borden Co.*
     347 U.S. 514 (1954) .....................................................................................6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

*Vaughn v. Bay Envtl. Mgmt.*
    567 F.3d 1021 (9th Cir. 2009) .......................................................... 5

*Verizon Commc'ns. Inc. v. Law Offices of Curtis v. Trinko, LLP*
    540 U.S. 398 (2004) ................................................................ 2, 10, 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.*
    401 U.S. 321 (1971) ........................................................................... 9

**Federal Statutes**

15 U.S.C.

    § 1 ...................................................................................... 5, 12
    § 2 ...................................................................................... 1, 5
    § 7 ......................................................................................... 5
    § 12 ....................................................................................... 5
    § 15 ...................................................................................... 1, 5
    § 16 ......................................................................................... 6
    § 18 ................................................................................... 1, 3, 5

28 U.S.C.

    § 1404 ................................................................................. 15, 16

Telecommunications Act of 1996, 47 U.S.C.
    § 151, *et seq.* ............................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ......................................................................... 13

Fed. R. Civ. P. Rule 12(b)(1) ............................................................... 5, 16

Fed. R. Civ. P. Rule 12(b)(6) ........................................................... 4, 5, 16

Federal Rule of Civil Procedure 12(b)(1) & (6) ................................................ 16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In seeking to obtain dismissal or transfer of the Complaint filed by Plaintiffs Lloyd's Material Supply Company, Inc. ("LMS") and Lloyd's Equipment, Inc. ("LE;" collectively "Lloyd's"), Defendant Regal-Beloit Corporation ("RBC") wrongly attempts to shield itself with the provisions of a consent decree it entered into with the U.S. Department of Justice ("DOJ").  In fact, that consent decree does not support dismissal of this action because the claims brought by Lloyd's rest upon RBC's broader history of anticompetitive conduct, which extends beyond violations of the consent decree and includes, but is not limited to, RBC's initial acquisition of one of its largest competitors, A.O. Smith Corporation ("AOS"); its subsequent violation of agreements entered into with its primary remaining competitor, SNTech, Inc. ("SNTech"); and its acquisition of a majority share of the subject spa pump motor market.  Because these acts go beyond the mere violation of the consent decree and are independently subject to remedy under 15 U.S.C. §§ 2, 15, and 18, as well as tort doctrines, RBC's Motion to Dismiss should be denied by the Court.

Lloyd's did not bring the Complaint in order to enforce the terms of the consent decree between the DOJ and RBC.  As a result, Lloyd's certainly has standing to seek redress under federal antitrust law.  Section 15(a) of Title 15 of the United States Code expressly grants a private cause of action to "any person who shall be injured" as the result of a defendant's violation of antitrust laws. Again, because the Complaint alleges RBC's misconduct outside violations of the consent decree, the Complaint makes clear Lloyd's standing to assert these claims.

There is also no question that the Complaint was timely filed.  Of course, a cause of action for monopolization accrues only once a plaintiff suffers actual injury as the result of the defendant's conduct.  Moreover, a defendant's monopoly constitutes a continuing statutory violation which supports recovery for all

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

damages incurred less than four years prior to suit, even if acts giving rise to the monopoly occurred before that period.  Here, the Complaint indicates that Lloyd's suffered injury on or about December 2014, when RBC was finally able to drive out its primary competition from the electric spa pump motor market.  Because Lloyd's filed the Complaint in October 2016, within two years of the date this injury occurred (and well within the four year limitations period), none the statutes of limitation cited by RBC support dismissal.  Regardless, because of RBC's continuing violations of antitrust law, the claims asserted by Lloyd's are timely.

RBC's remaining contentions similarly miss the mark.  Because the Complaint does not rely solely upon RBC's failure to assist its competitors, the *Trinko* decision and similar authorities are inapplicable.  RBC also is not entitled to dismissal at the pleading stage based on its theory that the claims asserted by Lloyd's are "implausible" as Lloyd's has adequately pleaded factual allegations of attempted monopolization.  In addition, transfer to the U.S. District Court for the District of Columbia is inappropriate because the claims asserted by Lloyd's exist independent of the consent decree, and, thus, no good cause exists to transfer the action to Washington, D.C. to have the court there interpret the original consent decree.  For each of these reasons, RBC's Motion to Dismiss should be denied.

## II.    THE ALLEGATIONS OF THE COMPLAINT

In the Complaint, Lloyd's alleges that, prior to December 2010, there existed a competitive market for the "design, manufacture, and sale of electric motors for spa pumps."  (Compl. at ¶ 2.)  The businesses competing within the market included RBC, AOS, and third-party Nidec Motor Corporation.  (*Id*.)  However, RBC and AOS supplied more than 50% of the Relevant Market at that time.  (*Id.*)  The Complaint additionally alleges that RBC first attempted to monopolize the Relevant Market—the market for electric motor spa pumps—in December 2010, when it "attempted to acquire AOS's electric motor business assets, including electric motors for spa pumps."  (*Id.* at ¶ 3.)  RBC's acquisition

1    of AOS, if successful, "would have been an anticompetitive merger, giving RBC

2    control of the majority of the Relevant Market," resulting in limited competition

3    and a market ripe for price-fixing.  (*Id.*)

4          In response to this monopolization attempt, DOJ sued RBC in August 2011

5    to stop its acquisition of AOS on the ground that the combination would violate

6    the provisions of Section 7 of the Clayton Act, 15 U.S.C. § 18.  (*Id.* at ¶ 4.)  RBC

7    subsequently agreed to resolve DOJ's suit by consenting to divest its own assets

8    relating to electric spa pump motors to a non-affiliated company, SNTech, in order

9    to preserve competition in the market.  (*Id*. at ¶ 5.)  Pursuant to that resolution, the

10   U.S. District Court for the District of Columbia entered a Judgment in November

11   2011, which required RBC to divest its electric spa pump motor assets to SNTech

12   and enter into certain transition services and supply agreements with SNTech for

13   up to one year so that SNTech could operate as "a viable, ongoing business that is

14   engaged in the design, development, manufacture, marketing, servicing,

15   distribution, and sale of spa pump motors."  (*Id*. at ¶ 6.)

16         The Complaint alleges, however, that RBC failed to abide by "the spirit and

17   the letter of its agreement with DOJ" when it "engaged in deceptive and

18   anticompetitive behavior by ensuring that its divestiture of spa pump motor assets

19   to SNTech would fail."  (*Id.* at ¶ 7.)  This behavior took numerous forms,

20   including providing faulty materials and components to SNTech and failing to

21   provide necessary technical and engineering assistance such that SNTech could

22   "develop, manufacture, and sell operational spa pump motors in sufficient

23   quantities and with acceptable levels of product quality."  (*Id.*)  Ultimately, RBC's

24   anticompetitive behavior drove SNTech out of the Relevant Market and SNTech

25   filed for Chapter 11 bankruptcy in December 2014.  (*Id.*).  On June 23, 2015,

26   SNTech's Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy.  (*Id.*)

27         LE, as a direct purchaser of electric spa pump motors, and LMS, as a direct

28   purchaser of spa pumps from LE, were harmed by RBC's anticompetitive

behavior and subsequent monopolization of the Relevant Market in three ways. First, because LE was unable to obtain operational electric spa pump motors from SNTech, it was unable to supply LMS with operational spa pumps, and LMS was forced to purchase spa pumps containing RBC motors from other vendors at higher prices and increased inventory cost (*Id.* at ¶¶ 8, 9.)  Second, the now anticompetitive market resulted in less innovation and product choice and Lloyd's was unable to obtain a switchless motor with surge protection anywhere else in the Relevant Market, which forced Lloyd's to purchase inferior electric spa pump motors.  (*Id.* at ¶ 9.)  Third, because Lloyd's was unable to purchase a switchless motor with surge protection, LMS was forced to absorb the time and cost that it had spent developing spas that featured switchless motors with surge protection and educating its consumers about spas with such a motor.  (*Id.* at ¶ 9.)  Each of these harms is ongoing.  Accordingly, the Complaint asserts claims for Attempted Monopolization, Unfair Business Practices, Tortious Interference with Prospective Economic Relations, and Negligent Interference with Prospective Economic Relations against RBC.

## III.   APPLICABLE STANDARDS FOR DETERMINING A MOTION TO DISMISS

Under Fed. R. Civ. P. Rule 12(b)(6), a defendant may seek to dismiss a complaint when the complaint fails "to state a claim upon which relief may be granted."  Dismissal is appropriate only if "it appears beyond doubt that the nonmoving party 'can prove no set of facts in support of his claim which would entitled him to relief."  *Bone v. City of Los Angeles*, 471 F. App'x 620, 622 (9th Cir. 2012) (quoting *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  All inferences arising from the allegations of the complaint must be drawn "in the light most favorable to the plaintiff."  *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  Accordingly, "[i]t is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."

*Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) (internal quotation marks and citation omitted).[1]

## IV.   LLOYD'S HAS STANDING TO PURSUE RELIEF BASED UPON RBC'S ATTEMPTS TO MONOPOLIZE THE RELEVANT MARKET

LE and LMS are aggrieved parties, and as such, they are given the right under federal antitrust law to seek redress for RBC's attempts to monopolize the Relevant Market.  The fact that there happens to be a DOJ consent decree from November 2011 does not change this calculus.  Section 15(a) of Title 15 of the United States Code provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may sue therefore.  The antitrust laws referenced in Section 15(a) include both the Sherman Act, 15 U.S.C. §§ 1-7, and the Clayton Act, 15 U.S.C. §§ 12-19.  *See* 15 U.S.C. § 12.  Section 2 of the Sherman Act, 15 U.S.C. § 2, in particular, imposes penalties on any person or corporation[2] that "monopolize[s], or attempt[s] to monopolize, or combine[s] or conspire[s] with any other person or persons, to monopolize any part of the trade or commerce among the several States."  Similarly, 15 U.S.C § 18 bars any person from acquiring "the whole or any part of the assets of another" person or corporation engaged in commerce where the effect of such acquisition "may be substantially to lessen competition, or to tend to

---

[1]   RBC erroneously frames its Motion to Dismiss insofar as it is based upon Lloyd's purported lack of standing, as a Motion to Dismiss for lack of subject matter jurisdiction is properly raised under Fed. R. Civ. P. Rule 12(b)(1), not Rule 12(b)(6).  A dismissal for "lack of statutory standing, however, is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction."  *Vaughn v. Bay Envtl. Mgmt.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

[2]   Section 7 of Title 15 of the United States Code defines the term "person" to include corporations.

create a monopoly."  Thus, the statutory framework makes clear that Lloyd's has standing to assert claims against RBC to the extent Lloyd's has suffered harm as the result of RBC's efforts to monopolize the Relevant Market.

RBC's attempts to attack the standing of LE and LMS by mischaracterizing the Complaint as a mere attempt to enforce the terms of a long-past consent decree are unfounded.  The allegations in the Complaint go far beyond the terms of the consent decree because they include RBC's initial acquisition of AOS; RBC's anticompetitive conduct in failing to honor the terms of the transition services and supply agreements it entered into with SNTech; and RBC's anticompetitive conduct since acquiring more than 50% of the Relevant Market after SNTech filed for bankruptcy in 2014.

As to RBC's initial acquisition of AOS, the DOJ's initial filing of an antitrust action against RBC in 2011, and the parties' ultimate resolution by way of a consent decree, does not preclude a private cause of action brought by Lloyd's.  *See Free FreeHand Corp. v. Adobe Systems, Inc.*, 852 F. Supp. 2d 1171, 1181 (N.D. Cal. 2012) (stating that the "mere fact" that DOJ approved a merger does not mean a plaintiff is precluded from later alleging the merger was unlawful).  Private and public antitrust actions were "designed to be cumulative, not mutually exclusive" and because different policy considerations govern each, they "may proceed simultaneously or in disregard of each other."  *United States v. Borden Co.*, 347 U.S. 514, 518-19 (1954).  Indeed, 15 U.S.C. § 16(i) expressly contemplates private actions being brought notwithstanding prior DOJ actions because it tolls the statute of limitations for such private actions when DOJ has instituted either civil or criminal proceedings "to prevent, restrain, or punish violations of any of the antitrust laws[.]"  Lloyd's thus retains the right to sue RBC based upon RBC's initial acquisition of AOS, an acquisition which did not cause harm to Lloyd's until years after the consent decree.

Additionally, RBC is simply mistaken when it alleges that the allegations advanced by Lloyd's are based wholly on RBC's consent decree with DOJ.  The consent decree established solely that RBC "enter into" transition services and supply agreements with SNTech concerning its electric spa pump motor assets. (Motion to Dismiss, Exhibit "C," pp. 34-35, ¶¶ IV.F. and I.)  Lloyd's is not alleging that RBC failed to enter into such agreements, and thus is not alleging that RBC violated the plain terms of the consent decree.  Rather, Lloyd's alleges that part of the anticompetitive conduct in which RBC engaged in order to attempt to monopolize the Relevant Market was RBC's deliberate delivery of faulty materials and components to SNTech and calculatedly inadequate provision of technical and engineering assistance pursuant to those agreements.  While the consent decree may have been the genesis for the transition services and supply agreements, the Complaint's allegations that RBC deliberately "sandbagged" those agreements in a continuing attempt to monopolize the Relevant Market are not based wholly on the consent decree—they are based on a pattern and practice of anticompetitive behavior that RBC began when it bid to acquire AOS and continued when it divested its assets to SNTech.

Finally, it is patently clear that Lloyd's does not seek to enforce the consent decree inasmuch as the consent decree cannot be enforced at this time.  SNTech is defunct, having departed the Relevant Market and filed for bankruptcy in 2014.  Any attempt to enforce RBC's compliance with the terms of the consent decree would be legally absurd.  What Lloyd's seeks is a remedy for RBC's attempted monopolization of the Relevant Market—a course of conduct that began as early as 2010 with its initial attempt to acquire AOS, and which continues today thanks to SNTech's departure from the Relevant Market at the hands of RBC.  The proverbial ship has sailed on the consent decree, but the Court can still remedy the ongoing competitive harm that Lloyd's suffers as a result of RBC's anticompetitive conduct and unrivaled market dominance.  Because Lloyd's has

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,
TO TRANSFER

1    adequately alleged harm as a result of RBC's conduct, it has standing to pursue

2    such antitrust relief from RBC.

3    **V.    THE CLAIMS ASSERTED BY LLOYD'S ARE TIMELY**

4            RBC's contentions regarding the applicable statutes of limitation also miss

5    the mark.  While RBC argues at length about the nature and timing of its alleged

6    misconduct, it ignores the fact that an injured party's cause of action accrues only

7    when that party first suffers cognizable harm.  Here, because the Complaint

8    alleged that Lloyd's suffered harm on or about the time that SNTech became a

9    defunct entity and exited the Relevant Market through bankruptcy—December

10   2014—there is no question that Lloyd's has timely sought relief for its antitrust

11   and related injuries.  Additionally, the Complaint avers that RBC's

12   monopolization of the Relevant Market is ongoing, as are the injuries suffered by

13   Lloyd's.  (*See* Compl. at ¶¶   Lloyd's is now required to pay higher prices for

14   inferior products—the exact type of injury that the antitrust laws were designed to

15   remedy.  *See Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir.

16   2001) (noting that the antitrust laws are concerned with "acts that harm allocative

17   efficiency and raise the price of goods about their competitive level or diminish

18   their quality").  If nothing else, Lloyd's has made a claim timely for all damages it

19   suffered within the preceding four years.

20           **A.    The Claims Asserted By Lloyd's Accrued Within Two Years Of**

21                  **The Filing Of This Lawsuit**

22           The parties agree that a four-year limitation period applies with respect to

23   the first and second counts of the Complaint (attempted monopolization and unfair

24   business practices) and that a two-year limitation period applies with respect to

25   counts three and four (tortious and negligent interference with prospective

26   economic relations).  However, the parties disagree as to the timeliness of the

27   lawsuit.  RBC contends that the timeliness of the claims brought by Lloyd's turns

28   on the date(s) when RBC allegedly engaged in misconduct.  However, the law is

clear that the statute of limitations does not begin to run until Lloyd's suffers cognizable, non-speculative harm as a result of RBC's misconduct.  *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) *quoting Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (stating that a "cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act").

In this case, RBC engaged in anticompetitive conduct by attempting to acquire the electric spa pump motor business of its competitor, AOS, in 2011, and in effectively sandbagging its transition services and supply agreements in the years after it agreed to divest its own electric spa pump motor business to SNTech. However, any antitrust suit initiated by Lloyd's during this period of time would have been speculative, and thus unrecoverable, in that Lloyd's had not yet suffered any concrete harm and it was unclear what the effects of RBC's anticompetitive conduct would be on the Relevant Market.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) (finding that "future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable).  The damages suffered by Lloyd's, and the effect of RBC's anticompetitive behavior on the market, became ascertainable and provable once SNTech exited the Relevant Market by way of bankruptcy in December 2014.  The Complaint was filed within two years of that date, and was thus filed within the statute of limitations period.  *Id.* ("Thus, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future[.]")

Additionally, where a defendant engages in a continuing violation of antitrust law which results in continuing harm to the plaintiff, the plaintiff may recover for all "damage incurred within the four years preceding the filing of the complaint."  *La Salvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir.

1986) *citing Hanover Shoe Co. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968). Lloyd's has alleged a continuing violation of antitrust law in this case beginning in 2010 with RBC's attempted acquisition of AOS, continuing through its dealings with SNTech in its divestiture of its electric spa pump motor business line, and continuing through today, where it now sits in a position of unrivaled market dominance and exerts that dominance to its own profit and at the expense of innovation and competition. (*See* Compl. ¶¶ 61, 76.) These allegations are sufficient to withstand RBC's motion to dismiss.

### B. The *Trinko* Decision Does Not Support RBC's Statute Of Limitation Defense

The case of *Verizon Communications Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398 (2004), which takes up large swaths of RBC's brief, is simply inapplicable here. First, *Trinko* is factually limited to claims of anticompetitive behavior in markets that are highly-regulated by other statutes. The Court's determination in *Trinko* that a telecommunications carrier could not be held liable for anticompetitive violations of the Telecommunications Act of 1996, 47 U.S.C. § 151, *et seq.*, was premised on the fact that the defendant was already subject to a "detailed regulatory scheme" that "was designed to deter and remedy anticompetitive harm" and that the "additional benefit to competition provided by antitrust enforcement will tend to be small, and it will be less plausible that the antitrust laws contemplate such additional scrutiny." *Id.* at 412; *see also Pac. Bell Tel. Co. v. linkLine Commc'ns., Inc.,* 555 U.S. 438 (2009) (citing FCC regulations as a basis for its determination that the defendant had no antitrust duty to deal with competitors.) In other words, *Trinko* stands for the proposition that when there is a highly-regulated and legislated industry with ample statutory and administrative redress for anticompetitive behavior, access to the remedies provided by the antitrust laws is unnecessary. Indeed, in highly-regulated markets, access to the remedies provided by the antitrust laws is

problematic because effective remediation of complex regulatory violations "will ordinarily require continuing supervision of a highly detailed decree," supervision that Article III courts are not in a position to provide on a continuing basis. *Id*. at 414-15.  The Relevant Market in this case, unlike the provision of telecommunications services, is not highly regulated—it is a market relatively free of legislation that has been imbalanced by RBC's anticompetitive conduct, and thus the antitrust laws provide the appropriate remedy.  Indeed, unlike *Trinko*, it is the only remedy available to Lloyd's.

In any event, the holding in *Trinko* would not dispose of this case because Lloyd's has alleged more anticompetitive behavior than simply RBC's failure to assist its market rival, SNTech.  Rather, Lloyd's has adduced facts sufficient to show a history of anticompetitive behavior, to include RBC's attempt to acquire its primary competitor's (AOS's) electric spa motor business line, and its ongoing attempts to monopolize the Relevant Market since SNTech's bankruptcy.  There is a certain amount of irony, however, in RBC contending in its Motion to Dismiss that its flaunting of the provisions of its consent decree with DOJ, entered into precisely to avoid violations of the antitrust laws, should not give rise to liability because such liability would not serve the purposes of the antitrust laws.  DOJ plainly recognized the significant risk of monopolization in the Relevant Market if RBC were to eliminate a competitor from that market; RBC has now successfully done so and the interests of avoiding monopolistic conduct are best served by requiring RBC to face liability for such anticompetitive behavior.

## VI.   THE COMPLAINT'S ALLEGATIONS ARE PLAUSIBLE

The Complaint contains plausible allegations of misconduct by RBC in violation of both antitrust and California law.  RBC's attempt to use the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to pick apart the allegations advanced by Lloyd's is wholly unavailing.

In *Twombly*, the Court addressed whether claims brought by a class of local telephone and Internet subscribers against certain Incumbent Local Exchange Carriers ("ILECs") under Section 1 of the Sherman Act were sufficiently pled to state a claim upon which relief could be granted. *Id.* at 550-51, 554-55. In their pleadings, the plaintiffs alleged that the ILECs had restrained trade by engaging in "parallel conduct" whereby: (1) the defendants each inhibited the growth of competitors in their respective service areas; and (2) agreed to refrain from competing against one another. *Id.* at 550-51. The Court ultimately held that the *Twombly* plaintiffs had not met the applicable pleading standards because bald allegations of parallel conduct among business competitors was insufficient to establish a conspiratorial agreement to retrain trade. *Id.* at 556-57 ("It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.")

The allegations of this Complaint and the allegations in *Twombly* are in no way factually similar. This case does not involve allegations of parallel conduct with bare assertions of a conspiracy. Rather, Lloyd's has adduced the following, specific facts: (a) RBC attempted to monopolize the Relevant Market by acquiring the electric spa pump motor business of its primary competitor, AOS, in 2011; (b) RBC was allowed to acquire AOS, but agreed to divest its own electric spa pump motor assets to SNTech; (c) RBC divested its electric spa pump motor assets to SNTech, but did so in such a way that drove SNTech out of the Relevant Market by way of bankruptcy; (d) RBC now controls more than 50% of the Relevant Market; (e) the Relevant Market is now less innovative because there are no switchless motors with surge protection available to Lloyd's; and (f) Lloyd's has suffered monetary damage because RBC's anticompetitive behavior has left LE unable to manufacture its own spa pumps, left LMS unable to utilize and sell spas designed for spa pumps with switchless motors and surge protection, and required LMS to purchase spa pumps with RBC motors at increased prices. Those

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

allegations meet and exceed the federal pleading standards and clearly exceed the allegations adduced in *Twombly.*

RBC's complaints regarding the plausibility of Lloyd's allegations are more suited for a motion for summary judgment, not a motion to dismiss.  At the initial pleading stage, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Twombly*, 550 U.S. at 570 (finding that there is no "heightened fact pleading of specifics" in an antitrust case, but "only enough facts to state a claim to relief that is plausible on its face").  Lloyd's has met this requirement and RBC's motion to dismiss should therefore be denied.

## VII.   LLOYD'S HAS ADEQUATELY ALLEGED DIRECT PURCHASES FROM RBC

RBC also wrongly contends that Lloyd's lacks standing to pursue relief because it has not alleged that it purchased products directly from RBC. However, the Complaint clearly states that because of RBC's anticompetitive actions, Lloyd's was "forced to purchase electric motors manufactured and sold by RBC or third parties."  (Compl. at ¶ 8.)  At this stage in the litigation, LE and LMS have not unearthed every single invoice generated to purchase electric motors for spa pumps in the wake of SNTech's demise because it is not required. LE and LMS have alleged that they have purchased electric motors for spa pumps from RBC because of the demise of SNTech and that is sufficient to show the requisite direct purchase.  Certainly, at the summary judgment stage, Lloyd's will need to show concrete evidence of such direct purchases if it wants to maintain its antitrust action for treble damages.  *See Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977) (holding that only direct purchasers may recover treble damages under the antitrust laws); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir. 1998) (holding that indirect purchasers are not barred from bringing

an antitrust claim for injunctive relief).  We are not there yet and the Court should not rule prematurely on this issue.

## VIII.  THE STATE LAW CLAIMS ASSERTED BY LLOYD'S ARE VALID

Much like the antitrust claims, RBC cannot defeat the state law claims asserted by Lloyd's (counts three and four) on the ground that those claims are merely conclusory or subject to a competition privilege.  As even the authority cited by RBC makes clear, the competition privilege applies only "in the absence of prohibition by statute, illegitimate means, or some other unlawful element." *UMG Recordings, Inc. v. Global Eagle Enters., Inc.*, 117 F. Supp. 3d 1092, 1116 (C.D. Cal. 2015).  As set forth throughout the Complaint, however, RBC has engaged in unlawful conduct by attempting to monopolize the electric spa pump motor market and restrain competition in violation of the Sherman Act and the Clayton Act.  Therefore, on its face, RBC's argument falls.

As for RBC's contention that the allegations in these counts are merely conclusory, RBC essentially rehashes the same argument it made earlier.  As discussed above in connection with RBC's "plausibility" argument, the Complaint adequately and specifically alleges misconduct by RBC, including, but not limited to, RBC's acquisition of AOS and garnering of a majority market share, its attempts to restrain competition, and the resulting damages suffered by Lloyd's. Given these allegations, there is no question that counts three and four should stand.

RBC also cannot defeat count four on the ground that RBC owed no duty of care to Lloyd's.  RBC again mischaracterizes the Complaint's allegations as describing Lloyd's to be only a former customer of one of RBC's competitors.  In fact, the Complaint alleges that Lloyd's purchased goods directly from RBC, (Compl. at ¶ 8), and that RBC had knowledge of the relationship between LE and LMS, (Compl. at  ¶ 85), such that it was entirely foreseeable that RBC's anticompetitive misconduct would have harmed the relationship between LE and

1   LMS.  The court should deny RBC's motion to dismiss counts three and four of

2   the Complaint.

3   **IX.   NO GOOD CAUSE EXISTS TO TRANSFER THE ACTION TO THE**

4   **DISTRICT OF COLUMBIA**

5        Finally, RBC wrongly relies on the provisions of an unpublished decision

6   from the U.S. District Court for the Northern District of California to argue for a

7   transfer of this action.  Under 28 U.S.C. § 1404(a), for the "convenience of parties

8   and witnesses, in the interest of justice, a district court may transfer any civil

9   action to any other district or division where it might have been brought or to any

10   district or division to which all parties have consented."  In this manner, § 1404

11   makes clear that a transfer is subject to the discretion of the court, and the primary

12   consideration in exercising that discretion should be "the convenience of parties

13   and witnesses."  *Id.*

14        RBC makes no meaningful argument that transfer of this action to the

15   District of Columbia would further the convenience of the parties or of any

16   witnesses.  Given that the Lloyd's plaintiffs are both California corporations, and

17   RBC is a Wisconsin corporation that does business with California corporations,

18   the evidence suggests that such a transfer would actually inconvenience all parties

19   concerned.  Moreover, RBC has not suggested that any of the witnesses or

20   transactions that occurred in this case took place in the District of Columbia.

21        Rather than address issues of convenience, RBC points to the unpublished

22   decision in *Goulart v. United Airlines, Inc.*, 1994 U.S. Dist. LEXIS 21856 (N.D.

23   Cal. 1994).  There, the court held that claims of fraud, breach of contract, and

24   RICO violations brought by a group of United Airlines supervisors should be

25   transferred to the Northern District of Illinois because resolution of the claims was

26   "inextricably intermingled" with the terms of a consent decree entered between

27   United Airlines, the plaintiffs' former union, and others.  *Id.* at *10.  The court

28   further found that the plaintiffs' "request for relief cannot be separated from the

relief provided in the Consent Decree" and instead, "[s]uch relief would require United to act in direct contravention of the Consent Decree."  *Id.*  This case stands in stark contrast to the circumstances of *Goulart*.  Lloyd's does not ask this Court to enforce the terms of the consent decree previously entered between the DOJ and RBC.  Again, because SNTech is no longer a viable corporation, the terms of the consent decree cannot be enforced at this point in time.  Furthermore, Lloyd's does not seek any form of relief that would require RBC to act in contravention of the DOJ consent decree.  For these reasons, and because a transfer would not promote the convenience of the parties or witnesses, no good cause exists to transfer this action to the U.S. District Court for the District of Columbia.

## X.  CONCLUSION

For each of the foregoing reasons, Plaintiffs Lloyd's Material Supply Company, Inc. and Lloyd's Equipment, Inc. respectfully request that the Court deny the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6), or Alternatively, to Transfer Pursuant to 28 U.S.C. § 1404(a) filed by Defendant Regal-Beloit Corporation.  Alternatively, Lloyd's requests that, should the Court grant the motion in any respect, it also grant Lloyd's leave to amend its Complaint.

DATED:  February 10, 2017                LARSON O'BRIEN LLP


By   /s/ Stephen G. Larson
      Stephen G. Larson
      Melissa A. Meister
      Attorneys for Plaintiffs
      LLOYD'S MATERIAL SUPPLY
      COMPANY, INC. and LLOYD'S
      EQUIPMENT, INC.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER