Michael J. Lockerby (admitted *pro hac vice*)
   mlockerby@foley.com
Alan D. Rutenberg (admitted *pro hac vice*)
   arutenberg@foley.com
Melinda F. Levitt (admitted *pro hac vice*)
   mlevitt@foley.com
Benjamin R. Dryden (admitted *pro hac vice*)
   bdryden@foley.com
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
Telephone:  202.672.5300
Facsimile:   202.672.5399

A. Joel Richlin (CA Bar No. 246318)
   jrichlin@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, California 90071
Telephone:  213.972.4500
Facsimile:   213.486.0065

Attorneys for Defendant
REGAL BELOIT CORPORATION,
a Wisconsin corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD'S MATERIAL SUPPLY COMPANY, INC. a California corporation; and LLOYD'S EQUIPMENT, INC., a California corporation,, <br><br> Plaintiff, <br><br> vs. <br><br> REGAL BELOIT CORPORATION, a Wisconsin corporation; and DOES 1-25, <br><br> Defendants. | Case No. 2:16-cv-08027-DMG (JPRx) <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) & (6), OR ALTERNATIVELY, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)** <br><br> Date:  March 3, 2017 <br> Time:  9:30 a.m. <br><br> Complaint Filed: 10/27/16 <br> Judge: Honorable Dolly M. Gee <br> United States Courthouse <br> 350 West 1st Street <br> Courtroom 8C, 8th Floor <br> Los Angeles, CA 90012 |

4823-1600-9027.3

### RBC'S REPLY

### TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ...................................................................................... 3

    A.   Plaintiffs Have No Standing to Allege Violation of the  Consent Decree to Which Plaintiffs Were Not Parties. ............................. 3

        1.   Plaintiffs' allegations that RBC failed to honor its agreements with SNTech *are* allegations of consent decree violations. .......................................................... 4

        2.   Plaintiffs' allegations about RBC's acquisition of AOS's spa motor business are barred by the statute of limitations. .................................................................... 5

        3.   Plaintiffs have not alleged that RBC has done *anything* unlawful since SNTech filed for bankruptcy in 2014. .................. 7

    B.   Plaintiffs' Other Attempts to Rewrite Their Complaint Are Insufficient to Avoid Dismissal As a Matter of Law. .................. 9

        1.   The Complaint does not allege, and it would be unreasonable to infer, that RBC's 2011 actions caused SNTech's 2014 bankruptcy. ............................................ 9

        2.   The Complaint does not allege, and cannot be amended to  allege, that Plaintiffs purchased spa motors directly from RBC. ...................................................................... 11

    C.   *Trinko*'s Holding That Companies Have No Antitrust Duty to Aid Their Competitors is Not Limited to Highly Regulated Industries........... 12

    D.   If Plaintiffs' Complaint Is Not Dismissed, the Case Should Be Transferred to the Court That Entered the Consent Decree....................... 14

III.  CONCLUSION ................................................................................. 16

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
Case No. 2:16-cv-08027-DMG (JPRx)

4823-1600-9027.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
881 F.2d 1396 (7th Cir. 1989) ...................................................................... 8

*In re Adderall XR Antitrust Litig.*,
754 F.3d 128 (2d Cir. 2014) ...................................................................... 13

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) .................................................................... 9

*In re Air Passenger Computer Reservations Sys. Antitrust Litig.*,
694 F. Supp. 1443 (C.D. Cal. 1988) ........................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................... 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 11, 16

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ............................... 1

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977).................................. 8

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
No. CV 15-9814 DSF, 2016 U.S. Dist. LEXIS 86414 (C.D. Cal. May 11,
2016) ........................................................................................................... 6

*Conley v. Gibson*,
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)...................................... 11

*Dahl, Inc. v. Roy Cooper Co.*,
448 F.2d 17 (9th Cir. 1971) ....................................................................... 1

*Delaware Valley Surgical v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) ................................................................... 2

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016)........................................... 11

*Goulart v. United Airlines, Inc.*,
No. C 94-1751 SC, 1994 U.S. Dist. LEXIS 21856 (N.D. Cal. Sept. 28, 1994) ................................................................................................. 3, 15

*Illinois Brick Co. v. Illinois*,
431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ................................. 2

*Koehler v. Green*,
358 F. Supp. 2d 346 (S.D.N.Y. 2005) ....................................................... 14

*La Salvia v. United Dairymen of Arizona*,
804 F.2d 1113 (9th Cir. 1986) .................................................................. 6

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
140 F.3d 1228 (9th Cir. 1998) ................................................................. 2

*North Star Gas Co. v. PG&E Co.*,
15-cv-2575-HSG, 2016 U.S. Dist. LEXIS 131684 (N.D. Cal. Sept. 26, 2016) .................................................................................................. 13

*Pace Inds., Inc. v. Three Phoenix Co.*,
813 F.2d 234 (9th Cir. 1987) .................................................................. 6

*Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438, 129 S. Ct. 1109, 172 L. Ed. 2d 836 (2009) ...................... 9, 13

*Parkison v. Butte County Sheriff's Dep't*,
No. 2:09-cv-2257 MCE DAD P, 2013 U.S. Dist. LEXIS 35018 (E.D. Cal. Mar. 13, 2013) ............................................................................... 14

*Rafferty v. NYNEX Corp.*,
744 F. Supp. 324 (D.D.C. 1990), *aff'd in relevant part*, 60 F.3d 844 (D.C. Cir. 1995) ............................................................................................. 1

*Rambus Inc. v. FTC*,
522 F.3d 456, 463 (D.C. Cir. 2008) .......................................................... 8

*Sharpe v. Select Portfolio Services, Inc.*,
No. CV-2011-01436-PHX-GMS, 2012 U.S. Dist. LEXIS 178031 (D. Ariz. Dec. 17, 2012) ............................................................................... 14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ................................................................. 11

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993) ...............................8

*Treadaway v. Academy of Motion Picture Arts & Sciences*,
  783 F.2d 1418 (9th Cir. 1986) ..................................................................14

*United States v. FMC Corp.*,
  531 F.3d 813 (9th Cir. 2008) ......................................................................4

*United States v. Syufy Enterprises*,
  903 F.2d 659 (9th Cir. 1990) ......................................................................8

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ...................8, 9, 12, 13, 14, 16

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ....................................................................4

*Willoughby v. Potomac Elec. Power Co.*,
  853 F. Supp. 174 (D. Md. 1994) ...............................................................14

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................14

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...............................................................................4

Fed. R. Civ. P. 12(b)(6) ...........................................................................4, 9

4823-1600-9027.3

**RBC'S REPLY**

Defendant, Regal Beloit Corporation ("RBC"), respectfully states as follows in reply to Plaintiffs' Opposition (Doc. # 24)[1] to Defendant's Motion to Dismiss, or Alternatively, to Transfer (Doc. # 20).

# I.   INTRODUCTION

The precedents of the Supreme Court, the Ninth Circuit, and the other courts cited in Defendant's Memorandum of Law leave no doubt that—even when construed in the light most favorable to Plaintiffs—the Complaint is properly subject to dismissal. Plaintiffs' efforts to avoid dismissal are so zealous that their Opposition takes great liberties with both the "facts" alleged in the Complaint and the law.

The law could not be more clear that Plaintiffs lack standing to enforce the consent decree upon which all of their claims are based.  This consent decree was entered by another federal court, the United States District Court for the District of Columbia (the "D.C. District Court"), in a case to which Plaintiffs were not parties.  Plaintiffs cannot overcome the authority from the Supreme Court,[2] the Ninth Circuit,[3] and the D.C. Circuit[4] holding that they lack standing to enforce the consent decree between RBC and the Department of Justice ("DOJ").  Instead, their Opposition insists that "[t]he allegations of the Complaint go far beyond the consent decree."[5]  In reality, Plaintiffs' characterizations of their allegations "go far beyond" what the Complaint actually says. For example, the Complaint provides no support for the assertion in Plaintiffs' Opposition that their claims are also based on RBC's 2011 acquisition of the spa motors business of A.O. Smith ("AOS").  If the Complaint actually made such a claim, it would be time-barred as a matter of law.  Similarly, the fact that the company to which RBC

---

[1] Plaintiffs' Opposition is cited herein by page number as "Opp."
[2] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975).
[3] *See Dahl, Inc. v. Roy Cooper Co.*, 448 F.2d 17, 20 (9th Cir. 1971).
[4] *See Rafferty v. NYNEX Corp.*, 744 F. Supp. 324, 328 (D.D.C. 1990), *aff'd in relevant part*, 60 F.3d 844, 849 (D.C. Cir. 1995) (collecting cases).
[5] [*See* Opp., p. 11 of 21.]

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-1-   Case No. 2:16-cv-08027-DMG (JPRx)

4823-1600-9027.3

1  sold its spa motors business pursuant to the consent decree—SNTech, Inc.—filed for

2  bankruptcy three years later does not give rise to antitrust or any other claims.  On its

3  face, the Complaint alleges no anticompetitive conduct by RBC at any time since

4  SNTech's 2014 bankruptcy.  Last but not least, the Complaint is not saved from dismissal

5  by Plaintiffs' argument that their claims are ***really*** based on RBC's alleged violations of

6  its agreements with SNTech, not on alleged violations of the consent decree.  The

7  agreements at issue were specifically required by the consent decree.  The consent decree

8  is clear that violations of RBC's agreements with SNTech are violations of the consent

9  decree.  Because Plaintiffs are not parties to either the agreements with SNTech or the

10  consent decree, they lack standing to complain of RBC's alleged violations.

11      The other ways in which Plaintiffs' Opposition tries to rewrite both the Complaint

12  and the case law similarly will not withstand even cursory scrutiny.  For example,

13  Plaintiffs' Opposition suggests that RBC somehow caused SNTech to file for bankruptcy

14  and exit the spa motors market.  The Complaint itself, however, simply references the

15  fact that SNTech filed for bankruptcy in 2014.[6]  The Complaint does not allege that RBC

16  was responsible for SNTech's bankruptcy—much less state any facts that would support

17  such an allegation.

18      Through other rhetorical sleights of hand, Plaintiffs' Opposition tries to avoid the

19  *Illinois Brick* doctrine, under which "only direct purchasers have standing . . . to seek

20  damages for antitrust violations."[7]  According to Plaintiffs' Opposition, Plaintiff Lloyd's

21  Equipment, Inc. ("LE") was "a direct purchaser of electric spa pump motors."[8]  ***A direct***

22  ***purchaser from whom?***  Plaintiffs' Opposition does not say.[9]  The Complaint, however,

23

24  [6] [*See* Compl. ¶¶ 7, 60.]
    [7] *Delaware Valley Surgical v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir.
25  2008) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735, 97 S. Ct. 2061, 52 L. Ed. 2d
    707 (1977)).  *See also Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d
26  1228, 1235 (9th Cir. 1998).
    [8] [*See* Opp., p. 8 of 21.]
27  [9] As for Plaintiff Lloyd's Material Supply Company, Inc. ("LMS"), Plaintiffs' Opposition
    does say that LMS is "a direct purchaser of spa pumps ***from LE***."  [*See* Opp., p. 8 of 21
28  (emphasis added).]  That allegation would help LMS avoid the *Illinois Brick* doctrine
    only if LMS sought damages for antitrust violations against its affiliate LE.

says that LE purchased RBC-manufactured spa pump motors only from three so-called "Alternate Vendors"[10]—not from RBC.  In other words, during the time period at issue, LE was only an ***indirect purchaser*** from RBC.  Nor is this a case in which Plaintiffs could amend their Complaint to add direct purchaser allegations.  In an effort to avoid dismissal, Plaintiffs' Opposition suggests the possibility that invoices showing that LE made direct purchases from RBC might later be "unearthed."[11]  The fact of the matter, however, is that Plaintiffs have already been on an archaeological dig for such invoices and found nothing.  According to a January 26, 2017 filing in Los Angeles County Superior Court, Plaintiff LE has not purchased a single spa motor from RBC since at least September 1, 2011.[12]  Granting Plaintiffs leave to amend to allege that LE was in fact a direct purchaser from RBC would therefore be futile.

Even if the Complaint were not subject to dismissal, it clearly does not belong in this Court.  The D.C. District Court that entered the consent decree—part of which included the SNTech agreements that RBC allegedly breached—specifically retained jurisdiction to enforce its provisions.  The fact that Plaintiffs chose their home court in California is simply insufficient to overcome the overwhelming authority that "the interests of justice" outweigh potential inconvenience to Plaintiffs that might result from transfer.  *Goulart v. United Airlines, Inc.*, No. C 94-1751 SC, 1994 U.S. Dist. LEXIS 21856, at *14 (N.D. Cal. Sept. 28, 1994).

## II.   **ARGUMENT**

### A.   **Plaintiffs Have No Standing to Allege Violation of the Consent Decree to Which Plaintiffs Were Not Parties.**

While conceding that a consent decree cannot be enforced by individuals who were not parties to it, Plaintiffs nevertheless argue that they have standing to sue RBC because "[t]he allegations in the Complaint go far beyond the terms of the consent decree."  [Opp.

---

[10] [*See* Compl. ¶ 9.]
[11] [*See* Opp. at p. 18 of 21.]
[12] [*See* Reply, RJN, Lockerby Decl., ¶ 2, Ex. A at p. 4, ¶ 4 & p. 6, ¶ 4.]

at p. 11 of 21.]  According to Plaintiffs' Opposition, the allegations in the Complaint that go "far beyond" violation of the consent decree "include RBC's initial acquisition of AOS; RBC's anticompetitive conduct in failing to honor the terms of the transition services and supply agreements it entered into with SNTech; and RBC's anticompetitive conduct since acquiring more than 50% of the Relevant Market after SNTech filed for bankruptcy in 2014."  [Opp. at p. 11 of 21.]  Even if the Complaint actually made these allegations, they would be insufficient to establish standing as a matter of law.  On this basis alone, the Complaint should be dismissed for lack of subject-matter jurisdiction.[13]

### 1.   Plaintiffs' allegations that RBC failed to honor its agreements with SNTech *are* allegations of consent decree violations.

As actually filed, the Complaint bases its alleged violations of federal antitrust law and state law on RBC's alleged failure to comply with a consent decree requiring RBC to provide supplies and support to RBC's competitor SNTech.  Ninth Circuit precedents are clear that, because Plaintiffs were not parties to or intended beneficiaries of this consent decree they lack standing to make these claims as a matter of law.  *See, e.g.*, *United States v. FMC Corp.*, 531 F.3d 813, 820-21 (9th Cir. 2008).

In an effort to avoid this controlling precedent, Plaintiffs argue that they are not seeking to enforce the consent decree because the consent decree only required RBC to "enter into" transition services and supply agreements with SNTech.  Because RBC did "enter into" the agreements as required, Plaintiffs argue, the Complaint's allegation that RBC failed to *honor* those agreements does not technically implicate the consent decree

---

[13] In a footnote, Plaintiffs argue that a motion to dismiss for lack of standing should be brought under Fed. R. Civ. P. 12(b)(6) rather than under Fed. R. Civ. P. 12(b)(1).  [Opp. at p. 10 n.1 of 21.]  Plaintiffs are correct that *statutory* standing—that is, whether a plaintiff meets the statutory requirements for bringing a claim—implicates Fed. R. Civ. P. 12(b)(6).  But here, RBC asserts that Plaintiffs lack *constitutional* standing because they do not have a personal stake in RBC's consent decree sufficient to warrant their invocation of this Court's subject-matter jurisdiction.  Accordingly, RBC's motion to dismiss for lack of standing is properly considered under Fed. R. Civ. P. 12(b)(1).  "Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

4823-1600-9027.3

itself.  [Opp. at p. 12 of 21.]  To agree with Plaintiffs, this Court would have to—in
effect—rewrite the consent decree as entered by the D.C. District Court.  The consent
decree is explicit that RBC was required not only to ***enter into*** transition services and
supply agreements with SNTech but also to ***perform under*** those agreements in a manner
that ensured that SNTech would be able to maintain the spa motors business that it was
receiving from RBC.  Specifically, the consent decree provides as follows:

> The divestiture of the [Spa Motor] Assets shall be accomplished
> so as to satisfy the United States, in its sole discretion, that the
> terms of any agreement between the Acquirer . . . and RBC do
> not give RBC the ability unreasonably to raise that acquirer's
> costs, to lower that acquirer's efficiency, or otherwise to
> interfere in the ability of that acquirer to compete effectively.

[MTD, RJN, Lockerby Decl. ¶ 4 (Doc. # 21-2), Ex. C at 12 (Doc. # 21-4).]  Additionally,
the consent decree provides:

> Unless the United States otherwise consents in writing, the
> divestiture of the [Spa Motor] Assets shall be accomplished in
> such a way as to satisfy the United States, in its sole discretion,
> that the [Spa Motor] Assets can and will be used by the
> Acquirer . . . as part of a viable, ongoing business that is
> engaged in the design, development, manufacture, marketing,
> servicing, distribution, and sale of the Divested RBC Product
> Lines and the divestiture of the [Spa Motor] Assets will remedy
> the competitive harm alleged in the Complaint.

[*Id.*]  The foregoing specific provisions are in addition to the overall requirement of the
consent decree that "RBC shall not take any action that will impede in any way the
operation, use, or divestiture of the [Spa Motor] Assets."  [*Id.* at 9.]  If RBC's
performance or lack thereof impeded SNTech's ability to operate the divested business,
RBC could have violated the consent decree.  Plaintiffs do not have standing, however, to
assert a claim that RBC failed to fully honor its agreements with SNTech as required by
the consent decree.  Plaintiffs simply were not parties to either the agreements or the
consent decree.

**2.   Plaintiffs' allegations about RBC's acquisition of AOS's spa motor business are barred by the statute of limitations.**

Plaintiffs' Complaint alleges that RBC's acquisition of AOS's spa motor business

1  closed in 2011 after entry of the consent decree on November 1, 2011.  [Compl. ¶¶ 6, 51].

2  Even if the Complaint alleged that the acquisition itself violated federal or state law, it

3  occurred well outside the two-year and four-year limitations periods applicable in this

4  case.  [*See* MTD, RJN, Lockerby Decl., ¶ 5, Ex. D).  In an effort to surmount this hurdle,

5  Plaintiffs now claim that RBC's 2011 acquisition of AOS resulted in "a continuing

6  violation" of the antitrust laws by RBC that persisted into 2014.  [Opp. at pp. 14-15 of

7  21.]  This argument finds no support in the authority cited by Plaintiffs[14] and is directly

8  contrary to the authority that RBC cited in its motion to dismiss—which Plaintiffs make

9  no effort to address, rebut, or distinguish.  "It cannot be the case that if a merger leads to

10  monopoly power then anything anticompetitive that the newfound monopolist does is a

11  'continuing violation' that began with the merger, allowing the merger to be challenged

12  indefinitely under section 2 of the Sherman Act."  *Complete Ent. Res. LLC v. Live Nation

13  Ent., Inc.*, No. CV 15-9814 DSF (AGRx), 2016 U.S. Dist. LEXIS 86414, at *3 (C.D. Cal.

14  May 11, 2016) [cited in Def's. Mem. ISO Mot. to Dismiss or, Alternatively, to Transfer

15  at p. 18 of 33.]  In this case, RBC's 2011 acquisition of AOS's spa motors business is

16  similarly not actionable as a "continuing violation" of the antitrust laws.  Even if the

17  acquisition caused RBC to acquire monopoly power, it cannot "be challenged indefinitely

18  under Section 2 of the Sherman Act."  *Id.* at *3.

19      Nor is there any merit to Plaintiffs' argument that they can recover for damages

20  caused by RBC's acquisition of AOS because those damages were "speculative, and thus

21  unrecoverable" until SNTech exited the market by going bankrupt in December 2014.

22  [*See* Opp. at pp. 14 of 21.]  This argument ignores the very allegations of Plaintiffs' own

---

24  [14] Plaintiffs cite *La Salvia v. United Dairymen of Arizona*, 804 F.2d 1113 (9th Cir. 1986)
for the general proposition that a continuing violation of the antitrust laws can extend the
25  statute of limitations for damages suffered within four years of the filing of the
Complaint.  This may be true as a general proposition of law, but it is inapplicable here.
26  RBC's acquisition of AOS was a one-time event that has not since been reaffirmed
through new and independent overt actions by RBC.  Therefore, the "continuing
27  violation" principle does not apply.  To restart the statute of limitations, the defendant
must commit an "overt act" that is "a new and independent act that is not merely a
28  reaffirmation of a previous act."  *Pace Inds., Inc. v. Three Phoenix Co.*, 813 F.2d 234,
238 (9th Cir. 1987).

Complaint, which states that RBC acquired AOS's spa motors business pursuant to a consent decree that compelled RBC to divest its own spa motors business to SNTech. [Compl. ¶¶ 3-6, 42-51.] The whole point of this consent decree, the Complaint alleges, was "to preserve the current state of competition in the Relevant Market by creating an independent, economically viable competitor to RBC." [Compl. ¶ 46.] Accordingly, if Plaintiffs were unable to sue RBC immediately after the acquisition in 2011, the reason was not that Plaintiffs' injury at the time was speculative. Rather, it was because ***RBC's acquisition of AOS did not injure Plaintiffs***. By divesting its own spa motors business to SNTech, RBC did exactly what the DOJ—as reflected in the consent decree—said that RBC needed do to preserve competition to the ultimate benefit of companies like Plaintiffs. Because Plaintiffs have not alleged that RBC's divestiture of its spa motors business to SNTech in 2011 caused Plaintiffs any injury—whether in 2011 or in 2014— their attempts to sue RBC for the 2011 acquisition of AOS are barred by the applicable statutes of limitations.

### 3.   Plaintiffs have not alleged that RBC has done *anything* unlawful since SNTech filed for bankruptcy in 2014.

In a last-ditch effort to avoid the statute of limitations, Plaintiffs argue that their Complaint is timely because it supposedly contains allegations about "RBC's anticompetitive conduct since acquiring more than 50% of the Relevant Market after SNTech filed for bankruptcy in 2014." [Opp. at p. 11 of 21.] What "anticompetitive conduct" after SNTech's 2014 bankruptcy filing does the Complaint allege? Plaintiffs' Opposition does not say. Nor does it cite anything in the Complaint that alleges that RBC did ***anything*** following the bankruptcy of SNTech. Plaintiffs' silence speaks volumes.

Even if SNTech's bankruptcy left RBC with a major share of the market for spa motors, RBC's market share alone would not establish liability for antitrust violations— much less entitle Plaintiffs to damages—according to the Supreme Court, the Ninth Circuit, and the D.C. Circuit. "It is settled law that the mere existence of a monopoly

1  does not violate the Sherman Act." *Rambus Inc. v. FTC*, 522 F.3d 456, 463 (D.C. Cir.
2  2008).[15]  It is not enough for Plaintiffs to allege that RBC acquired a major share of the
3  market by virtue of a competitor's exit from the market.  The mere fact that RBC's
4  competitor went out of business does not mean that RBC violated the antitrust laws.
5      To state a claim for attempted monopolization in violation of Section 2 of the
6  Sherman Act, Plaintiffs must allege that RBC "engaged in predatory or anticompetitive
7  conduct." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L.
8  Ed. 2d 247 (1993).  "[T]he possession of monopoly power will not be found unlawful
9  unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns*
10  *Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S. Ct. 872, 157 L.
11  Ed. 2d 823 (2004) (emphasis in original).  To be "predatory" or "anticompetitive," RBC's
12  conduct must reflect "the willful acquisition or maintenance of [monopoly] power as
13  distinguished from growth or development as a consequence of a superior product,
14  business acumen, or historic accident." *Trinko*, 540 U.S. at 407 (quotation omitted).
15  *Trinko* is clear that Plaintiffs' allegations are insufficient to state a claim absent the
16  allegation that RBC affirmatively ***did*** something predatory.  *Trinko* is equally clear that
17  RBC had no obligation under the antitrust laws to rush to the aid of its competitor.  The
18  mere allegation that RBC sat back and watched SNTech declare bankruptcy is
19  insufficient as a matter of law.
20      Notwithstanding the embellishments in Plaintiffs' Opposition, Plaintiffs'
21  Complaint is based on only one alleged act that possibly may have occurred after the
22  2011 entry of the DOJ consent decree:  RBC's supposed failure to comply with its

---

[15] *See generally United States v. Syufy Enterprises*, 903 F.2d 659, 664 (9th Cir. 1990) ("the nature of competition is to make winners and losers"); *In re Air Passenger Computer Reservations Sys. Antitrust Litig.*, 694 F. Supp. 1443, 1470 (C.D. Cal. 1988) ("Harm to a competitor, in itself, does not constitute a violation of the antitrust laws, and is not indicative of monopoly power."); *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989) ("Firms need not like their competitors; they need not cheer them on to success; a desire to extinguish one's rivals is entirely consistent with, often is the motive behind, competition."). The purpose of the antitrust laws, after all, is to protect competition, not competitors. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977).

obligations to SNTech under the DOJ consent decree.  The Complaint, however, does not allege any specific breaches by RBC within the limitations period.

Even if Plaintiffs had standing to enforce the consent decree, the holding in *Trinko* alone is fatal to Plaintiffs' antitrust claims.  "[A]s in *Trinko*, the defendant has no antitrust duty to deal with its rivals…."  *Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 449-50, 129 S. Ct. 1109, 172 L. Ed. 2d 836 (2009).  *Accord Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) ("[E]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws."  (quotation omitted)).

## B.   Plaintiffs' Other Attempts to Rewrite Their Complaint Are Insufficient to Avoid Dismissal As a Matter of Law.

### 1.   The Complaint does not allege, and it would be unreasonable to infer, that RBC's 2011 actions caused SNTech's 2014 bankruptcy.

Rule 12(b)(6) requires this Court to examine the legal sufficiency of what Plaintiffs' Complaint actually says, not what Plaintiffs' Opposition now says that it says. In an effort to avoid the statute of limitations and other grounds for dismissal, Plaintiffs' Opposition repeatedly suggests—without citation to the Complaint—that RBC caused SNTech to file for bankruptcy and exit the spa motors market.  The rhetoric of Plaintiffs' Opposition, however, finds no support in the actual Complaint, as the following side-by-side comparison shows:

| Allegations of the Complaint Regarding SNTech's Bankruptcy Filing in 2014 | Allegations of the Complaint As Characterized By Plaintiffs' Opposition |
| --- | --- |
| "SNTech has subsequently been driven out of the Relevant Market, having filed for Chapter 11 bankruptcy in December 2014, which was converted to a Chapter 7 bankruptcy on June 23, 2015." [Compl. ¶ 7.] | "RBC divested its electric spa pump motor assets to SNTech, but did so in such a way that drove SNTech out of the Relevant Market by way of bankruptcy." [Opp. at p. 12 of 21.] |
| "SNTech filed for Chapter 11 bankruptcy in December 2014, which was converted to a Chapter 7 bankruptcy on June 23, 2015 and is no longer actively engaged in the | "Here, the Complaint indicates that Lloyd's suffered injury on or about December 2014, when RBC was finally able to drive out its primary competition from the electric spa |

DEFENDANT'S  REPLY IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
Case No. 2:16-cv-08027-DMG (JPRx)

4823-1600-9027.3

development, manufacture, and sale of     pump motor market."
electric motors for spa pumps."           [Opp. at p. 7 of 21.]
[Compl. ¶ 60.]

The Complaint does allege that RBC failed to comply with the consent decree.  It fails to "connect the dots," however, between RBC's alleged non-compliance with the consent decree back in 2011 and SNTech's subsequent bankruptcy some three years later.  Nor would it be reasonable to infer that RBC's alleged provision of faulty motors and technical assistance single-handedly bankrupted an entire company that existed independently before RBC's divested a single business line to it in 2011.

Even if the Complaint alleged that RBC somehow caused SNTech's bankruptcy, it fails to allege that the bankruptcy caused Plaintiffs to suffer any injury within the limitations period.  According to Plaintiffs' Opposition, "the Complaint alleged that Lloyd's suffered harm on or about the time that SNTech became a defunct entity and exited the Relevant Market though bankruptcy—December 2014."  [Opp. at p. 13 of 21.]  Not only is this assertion unsupported by any citation to the Complaint, it is actually contrary to the allegations of the Complaint.  According to the Complaint, Plaintiffs stopped buying SNTech spa motors because of RBC's alleged "provi[sion of] faulty raw materials and components to SNTech" and "fail[ure] to provide the technical and engineering assistance needed to ensure that SNTech could develop, manufacture, and sell the former RBC spa motors."  [Compl. ¶ 7].  It was these alleged violations of the consent decree—not SNTech's later bankruptcy—that caused LE to switch its source of supply to the "Alternate Vendors" referenced in the Complaint.  [Compl. ¶¶ 8-9].  According to the Complaint:

> RBC's provision of defective raw materials and components to SNTech, and its failure to provide SNTech with the technical and engineering assistance required by the Final Judgment, ***directly led*** to SNTech's inability to develop, manufacture, and sell operational electric motors for spa pumps in sufficient quantities and with acceptable levels of product quality in the United States.

[Compl. ¶ 58  (emphasis added).[16]]  Therefore, Plaintiffs' argument that their injuries only became discernable in 2014 is not consistent with the Complaint as pled, underscoring the conclusion that their claims are time-barred.

### 2.  The Complaint does not allege, and cannot be amended to allege, that Plaintiffs purchased spa motors directly from RBC.

By Plaintiffs' own admission, the *closest* that the Complaint comes to alleging any direct purchases from RBC is the statement that "Lloyd's was 'forced to purchase electric motors manufactured and sold by RBC *or third parties*.'"  [Opp. at p. 18 of 21 (quoting Compl. ¶ 8) (emphasis added).]   That allegation may be close enough for horseshoes and hand grenades, but it is insufficient to satisfy the plausibility requirements of *Twombly*.[17] "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations omitted).

At best, Paragraph 8 of the Complaint alleges that at least one of the two Plaintiffs purchased RBC-manufactured spa motors *either* directly from RBC *or* indirectly from third parties.  Any doubt as to whether Plaintiff LMS is a "direct" or "indirect" purchaser from RBC is resolved, however, by the very next paragraph of the Complaint.  Paragraph 9 states that Plaintiff LMS stopped buying SNTech-manufactured spa motors and instead bought RBC-manufactured spa motors from three "Alternate Vendors," *i.e.*, Waterway Plastics, Inc., Gecko Alliance, Inc., and Balboa Water Group.  [Compl. ¶ 9.]  Notably,

---

[16] [*See also id.* ("Whenever LE would complain to SNTech regarding its inability to deliver operational electric motors for spa pumps, SNTech would reply that the source of the problems was RBC.").]

[17] Relatedly, Plaintiffs argue that the Complaint should only be dismissed if it appears beyond doubt that there are "no set of facts" that could support Plaintiffs' claim to recovery.  [Opp. at p. 9 of 21].  This argument is contrary to the Ninth Circuit's repeated determination that, "for pleading an antitrust claim, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), specifically abrogated the usual notice pleading rule under Rule 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (quotation omitted).

DEFENDANT'S  REPLY IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER
-11-                    Case No. 2:16-cv-08027-DMG (JPRx)

4823-1600-9027.3

RBC's name is not listed among the entities from which Plaintiffs purchased.  Because "Plaintiffs' specific factual allegations contradict Plaintiffs' general allegations," dismissal is proper.  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016).

Nor should  Plaintiffs be granted leave to amend their Complaint to allege that they purchased spa motors directly from RBC during the four-year statute of limitations governing their antitrust claims.  Any such amendment would be futile.  As RBC noted in support of its motion to dismiss, RBC is currently engaged in litigation with Plaintiffs in Los Angeles County Superior Court to enforce a $1.15 million judgment that RBC obtained in yet another action involving Plaintiffs' affiliates.  In that case, RBC recently moved for summary judgment.  In its January 26, 2017 response, Plaintiff LE admitted *four separate times* that it has not purchased a single spa motor from RBC since at least September 1, 2011.[18]  In light of that filing just last month, it is disingenuous at best for Plaintiff LE to argue that it has not yet "[a]t this stage in the litigation . . . unearthed every single invoice generated . . . in the wake of SNTech's demise."  [Opp. at p. 18 of 21.]  To the contrary, LE has already dug through its business records.  Based upon a review of the invoices that it "unearthed," LE has admitted to the Los Angeles County Superior Court that it *has not* purchased spa motors from RBC since 2011.  Plaintiffs owe the same duty of candor to this Court.

### C.   *Trinko*'s Holding That Companies Have No Antitrust Duty to Aid Their Competitors is Not Limited to Highly Regulated Industries.

Plaintiffs do not dispute that the Supreme Court's decision in *Trinko* precludes claims under Section 2 of the Sherman Act that are based on a defendant's alleged non-compliance with a legal obligation to aid its competitors.  Instead, Plaintiffs argue that

---

[18] [*See* Reply, RJN, Lockerby Decl., ¶ 2, Ex. A at p. 4, ¶ 4 & p. 6, ¶ 4 ("As of September 1, 2011, Lloyd's Equipment purchased motors for use in its spa pumps from a third party, SNTech, Inc ("SNTech"), not Regal Beloit."); *id.* at p. 5, ¶ 67 & p. 7, ¶ 67 ("Lloyd's Equipment also admitted that any entry documenting the failure of a motor it purchased on or after September 1, 2011, was not purchased from Regal Beloit, but rather was purchased from SNTech and should be excluded from its damages calculation.").]

*Trinko* does not apply here because it "was premised on the fact that the defendant was already subject to a detailed regulatory scheme" in the form of telecommunications regulations. [Opp. at p. 15 of 21 (quotation omitted).] Thus, Plaintiffs reason, *Trinko* does not provide a defense to a lawsuit based on violations of a consent decree in a relatively unregulated industry like spa motors.

There are two major problems with Plaintiffs' argument. First, the argument finds no support in the Supreme Court's decision itself. Granted, in declining to disturb the longstanding rule that businesses have no general antitrust duty to aid their competitors, the Supreme Court paused to describe the existence of "a regulatory structure designed to deter and remedy anticompetitive harm" as "[o]ne factor of particular importance" to its decision. But absolutely nothing in *Trinko* suggests that the decision was "premised on" there being a regulatory structure in place for telecommunications carriers as Plaintiffs assert. Nor does *Trinko* suggest in any way that its holding should be applied only in cases involving highly regulated industries (if such a line could even be meaningfully drawn). Thus, lower courts have not limited the application of *Trinko* to highly regulated industries. Instead, *Trinko* applies to ***any*** situation where a company finds itself legally obligated to aid a competitor.[19] *See, e.g.*, *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135 (2d Cir. 2014) (applying *Trinko* to reject a monopolization claim premised on the breach of a "contractual duty to supply goods" under a requirements contract); *North Star Gas Co. v. PG&E Co.*, 15-cv-2575-HSG, 2016 U.S. Dist. LEXIS 131684, at *81-82 (N.D. Cal. Sept. 26, 2016) (applying *Trinko* to reject a monopolization claim premised in part on a breach of contract). Here, then, where Plaintiffs' Complaint is based on the alleged violation of a federal consent decree, *Trinko* applies.

The second reason that Plaintiffs' argument fails is that RBC's obligation to

---

[19] It should not be surprising, however, if a legal obligation to aid a competitor arises most often in regulated industries. After all, the general rule in a free-market economy is that companies do not have any duty to aid their competitors. *See, e.g.*, *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448, 129 S. Ct. 1109, 172 L. Ed. 2d 836 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.").

support and supply SNTech in this case *was* based on a detailed regulatory regime: namely, the consent decree that RBC entered into with the DOJ. As the Complaint makes clear, the consent decree contains a number of detailed provisions intended to preserve the pre-merger state of competition in the market for spa motors. [Compl. ¶¶ 45-50.] The consent decree also has detailed enforcement provisions that allow the DOJ to investigate or punish any potential violation of the consent decree by RBC. [*See* Def's. Mem. ISO Mot. to Dismiss or, Alternatively, to Transfer at p. 27 of 33.] Thus, Plaintiffs' reading of *Trinko* actually cuts against their own argument, because the fact that the consent decree had a detailed structure and enforcement provisions only underscores how inappropriate it would be to infer from it an antitrust duty for RBC to have aided its competitor.

### D.   If Plaintiffs' Complaint Is Not Dismissed, the Case Should Be Transferred to the Court That Entered the Consent Decree.

Even if Plaintiffs had standing to enforce the consent decree, the issue of whether RBC in fact violated its provisions is properly referred to the United States District Court for the District of Columbia—the court that entered, and that retains jurisdiction to enforce, the consent decree on which Plaintiffs' claims are based. "When a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree." *Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1422 (9th Cir. 1986).[20]

---

[20] *See also Parkison v. Butte County Sheriff's Dep't*, No. 2:09-cv-2257 MCE DAD P, 2013 U.S. Dist. LEXIS 35018, at *41-42 (E.D. Cal. Mar. 13, 2013) ("[I]n the interest of comity and the orderly administration of justice, this court should decline to exercise jurisdiction over matters involving the enforcement of the terms of a consent decree entered in state court."); *Sharpe v. Select Portfolio Services, Inc.*, No. CV-2011-01436-PHX-GMS, 2012 U.S. Dist. LEXIS 178031 at *6 (D. Ariz. Dec. 17, 2012) ("Given the District of Massachusetts's familiarity with and continuing jurisdiction over the matters that form the basis of Plaintiff's surviving claim, the Court is inclined to find that transfer of the case to the District of Massachusetts is warranted."); *Koehler v. Green*, 358 F. Supp. 2d 346, 347 (S.D.N.Y. 2005) ("The court that approved the settlement in that litigation retained jurisdiction over the case 'for all matters relating thereto.' Given that court's familiarity with and continuing jurisdiction over the matters that form the basis of

Plaintiffs do not dispute that transfer to the D.C. District Court would further the judicial system's interests in comity and the orderly administration of justice.  Instead, Plaintiffs' Opposition argues that they are not seeking "any form of relief that would require RBC to act in contravention of the DOJ consent decree."  [Opp. at p. 21 of 21.] This argument misses the point.  If the Complaint presented any justiciable claims at all, the principal issue would be whether RBC fulfilled its obligations under its consent decree with the DOJ.  Resolution of that issue by this Court would, going forward, impair the D.C. District Court's ability to interpret and enforce the consent decree.  As a result, the interests of comity and the orderly administration of justice both weigh heavily in favor of transferring this case to the court that entered the consent decree.

Ignoring the interests of justice, Plaintiffs argue that transfer would be "inconvenien[t]" because none "of the witnesses or transactions that occurred in this case took place in the District of Columbia."  [Opp. at p. 20 of 21.]  This argument is patently incorrect.  ***Seventeen paragraphs*** of the Complaint reference transactions or events that took place in the District of Columbia—including the DOJ's filing of a lawsuit against RBC in the D.C. District Court and that court's subsequent entry of the consent decree upon which Plaintiffs' Complaint is based.  [*See* Compl. ¶¶ 4-7, 41-51, 54, 69.]  If the Complaint is not dismissed as a matter of law, a central issue that would likely be pursued in discovery and at a possible trial is whether the DOJ has reviewed or reached any conclusions about RBC's compliance with the consent decree.  Plaintiffs—both of which are located in California and claim to have suffered injury here—make the threadbare allegation that RBC "substantially affected trade and commerce . . . and restrained competition in California."  [Compl. ¶ 23.]  The Complaint does not allege, however, that the alleged conduct of RBC at issue occurred in California.  Even if it did,

---

the instant complaint, the Court finds that transfer of the case to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) is warranted." (quotation omitted)); *Willoughby v. Potomac Elec. Power Co.*, 853 F. Supp. 174, 176 (D. Md. 1994) ("Indeed, generally speaking a district court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it.").

"Plaintiffs chose to request relief inextricably intermingled with the provisions of the Consent Decree" and therefore "must … request it from the proper court." *Goulart*, 1994 U.S. Dist. LEXIS 21856, at *14. Under the circumstances, the "proper court" is not this one.

### III.   CONCLUSION

For lack of standing alone, Plaintiffs' Complaint is properly dismissed. Even if this Court had subject-matter jurisdiction, Plaintiffs' claims are barred by the applicable statutes of limitations and inconsistent with Supreme Court precedents such as *Trinko* and *Twombly*. And even if Plaintiffs could assert violation of a consent decree to which they are not parties, their claims should be heard by the court that entered and retained jurisdiction to enforce the consent decree.

Dated:  February 17, 2017

**FOLEY & LARDNER LLP**
Michael J. Lockerby
Alan D. Rutenberg
Melinda F. Levitt
Benjamin R. Dryden
A. Joel Richlin

_____
Michael J. Lockerby
Attorneys for Defendant REGAL BELOIT
CORPORATION, a Wisconsin corporation